SUMMITWOOD DEVELOPMENT, LLC, ET AL. *v.*
KENNETH ROBERTS, SR., ET AL.
(AC 32341)

DiPentima, C. J., and Lavine and Bear, Js.

Argued May 20—officially released August 23, 2011

*Dominic J. Aprile,* for the appellants (plaintiffs).

*Bryan L. LeClerc,* with whom was *Michael P. Burdo,* for the appellees (defendants).

*Opinion*

BEAR, J. The plaintiffs, Summitwood Development, LLC (Summitwood), and Nipmuc Properties, LLC (Nipmuc), initiated this action for damages and reformation of a sale and leaseback agreement, and they appeal from the summary judgment rendered by the trial court in favor of the defendants, Kenneth Roberts, Sr., Michael Armitage, Thomas Atkins, John DeTore and PDC-El Paso Meriden, LLC (PDC-El Paso).[1] The plaintiffs claim that the trial court erred in (1) overruling their objection to the defendants' request to amend their answer and special defenses and (2) applying the

---

[1] The individual defendants, Roberts, Armitage, Atkins and DeTore, will be referred to collectively as the "individual defendants."

doctrine of res judicata to bar the present action. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the resolution of the plaintiffs' appeal. In 2002, Nipmuc instituted an action in the Superior Court (*Nipmuc I*), seeking a declaratory judgment as to the validity of an escrowed lease and, by way of relief, an order requiring the escrow agent to deliver the lease to Nipmuc.[2] *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-02-0281664-S (August 11, 2005). That action arose out of a dispute relating to a lease between PDC-El Paso and Summitwood, acting on behalf of Nipmuc, of an approximately fifty-two acre parcel, which comprised a portion of a much larger tract of undeveloped property owned by Nipmuc situated in the city of Meriden and the town of Berlin.[3] Id.

PDC-El Paso had sought permission from the Connecticut siting council (siting council) to build an electric generation facility on a portion of the property separate from the fifty-two acre parcel. Id. In furtherance of the PDC-El Paso proposal, Nipmuc and Summitwood entered into an arrangement under which the latter would have the exclusive right to purchase the entire undeveloped property. Id. Summitwood then entered into an agreement to sell the property to PDC-El Paso. Id. The original version of the agreement contained a provision for either a sale or leaseback of approximately thirty acres by PDC-El Paso to Summitwood. The final version of the agreement contained

---

[2] Nipmuc's claim seeking a judgment declaring the lease valid and in effect was abandoned at a hearing held on July 15, 2005. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, Superior Court, judicial district of New Haven at Meriden, Docket No. CV-02-0281664-S (August 11, 2005).

[3] The lease establishes that the total acreage of the subject parcel is 51.935 acres. For the sake of clarity and convenience, this opinion will refer to the parcel as the "fifty-two acre parcel."

a provision under which PDC-El Paso would lease the fifty-two acre parcel, all of which was located in Meriden, to Summitwood. The lease of the fifty-two acre parcel would be held in escrow until the electric generation facility project was approved by the siting council. Id. After the sale to PDC-El Paso occurred, PDC-El Paso almost immediately sold the entire tract to Meriden Gas Turbines, LLC (Meriden Gas Turbines). Id. The siting council eventually issued to Meriden Gas Turbines the necessary permits for the construction of the electric generation facility, but it rejected the release from escrow of the lease to Summitwood and directed that the fifty-two acre parcel be donated to Meriden. Id.

In May, 2004, while *Nipmuc I* was pending, the plaintiffs commenced the present action, seeking damages and reformation of the sale and lease agreement, based on the defendants' alleged tortious and fraudulent conduct. In their complaint, the plaintiffs alleged the following additional facts. The individual defendants were agents or authorized representatives of PDC-El Paso. At various times during the course of negotiating the sale and lease agreement with Summitwood, Armitage, Roberts and Atkins represented that PDC-El Paso would deed or lease back to Summitwood, or its designee, Nipmuc, a portion of the undeveloped property and that such arrangement would be effective upon the siting council's approval of the electric generation facility plans. Roberts and Atkins further represented to Summitwood that Roberts would serve as Summitwood's sole liaison to communicate with both PDC-El Paso and the siting council about the lease of the fifty-two acre parcel. Roberts, Atkins and Armitage also gave assurances to the plaintiffs that the siting council had been apprised of the plaintiffs' leasehold interest in the fifty-two acre parcel. The defendants forwarded a letter to the siting council, however, portraying the plaintiffs' rights to the fifty-two acre parcel in a false and

disparaging manner. The plaintiffs alleged that these actions represented a fraudulent scheme intended to benefit the defendants at the expense of the plaintiffs' interests and that the defendants' actions have prevented the plaintiffs from receiving the benefit of their bargain.[4]

In December, 2004, while evidence was being presented in the *Nipmuc I* action, the defendants filed an answer and special defenses in the present matter. In their special defenses, the defendants did not allege the doctrine of res judicata. In August, 2005, judgment was rendered in *Nipmuc I* in favor of the defendants in that action, including PDC-El Paso.[5] The *Nipmuc I* court determined that siting council approval of the lease, which had not occurred, was a condition precedent to the delivery of the lease from escrow. Nipmuc appealed, and this court affirmed the judgment. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

On November 13, 2009, the defendants filed a motion for summary judgment in the present matter on the ground that this litigation is barred by the judgment in

---

[4] The complaint contains nine counts. The first count alleges common-law fraud against Roberts, Armitage, Atkins and PDC-El Paso. The second and third counts allege breach of contract and breach of the covenant of good faith and fair dealing, respectively, against Roberts. The fourth count is directed at all of the defendants and alleges a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The fifth and sixth counts allege civil conspiracy and tortious interference with contractual relations, respectively, against all of the defendants. The seventh count alleges slander of title against DeTore and PDC-El Paso. The eighth count requests reformation of the sale and leaseback agreement due to the fraudulent conduct of Roberts, Atkins, Armitage and PDC-El Paso. Finally, the ninth count alleges fraudulent concealment against all of the defendants.

[5] The defendants to the *Nipmuc I* action were PDC-El Paso, Meriden Gas Turbines, Thomas P. Cadden, and Meriden. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 91, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007).

*Nipmuc I.* Thereafter, on December 4, 2009, the defendants filed a request to amend their answer and special defenses to add the defense of res judicata. On December 21, 2009, the plaintiffs filed an objection to the request to amend, and, on January 8, 2010, the plaintiffs filed an objection to the motion for summary judgment.[6] On February 1, 2010, the court heard oral argument on the motion for summary judgment, and the defendants' request to amend their answer and special defenses was granted over the plaintiffs' objection at that hearing. On May 13, 2010, the court granted summary judgment in favor of the defendants. This appeal followed.

I

On appeal, the plaintiffs claim that the trial court erred in overruling their objection to the defendants' request to amend their answer and special defenses to add the defense of res judicata. Specifically, the plaintiffs argue that the defendants waived their right to assert res judicata by failing to include that defense in their original answer and special defenses filed on December 13, 2004. The plaintiffs also point out that the defendants waited approximately four years and three months from the rendering of judgment in *Nipmuc I* before raising the issue of res judicata in the present matter.

As an initial matter, the plaintiffs argue that the appropriate standard of review to apply to the trial court's decision granting the defendants' request to amend their answer and special defenses is plenary review. In support of their contention, the plaintiffs rely on our decision in *DiPietro* v. *Farmington Sports Arena, LLC,* 123 Conn. App. 583, 2 A.3d 963, cert. granted on other grounds, 299 Conn. 920, 10 A.3d 1053 (2010).[7] The defendants respond that the proper standard of review of a

---

[6] A second memorandum in opposition to the motion for summary judgment, dated January 8, 2010, was filed with the court on January 19, 2010.

[7] The Supreme Court granted certification to appeal in *DiPietro* on December 15, 2010. One of the questions presented for review is whether this court

trial court's decision on a request to amend a pleading is the abuse of discretion standard. We agree with the defendants.

Generally, "[a] motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court." (Internal quotation marks omitted.) *Canterbury* v. *Deojay*, 114 Conn. App. 695, 705, 971 A.2d 70 (2009). Here, the plaintiffs contend that their claim should be reviewed under the plenary standard because the trial court ruled on the plaintiffs' objection to the request to amend during the course of summary judgment proceedings.

The plaintiffs' reliance on this court's decision in *DiPietro* is misplaced. *DiPietro* considered the proper scope of review of a trial court's determination of the admissibility of expert witness testimony in the course of a summary judgment proceeding. There, this court determined that plenary review was appropriate because "it would be inconsistent with [the] plenary scope of review to subject a particular subset of [a] trial court's determinations in [summary judgment] proceedings, namely, the admissibility of an expert's opinion, to the highly deferential abuse of discretion scope of appellate review." *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 611.

Although the court's ruling on the request to amend in the present matter occurred during the proceedings on the motion for summary judgment, the court's decision to grant the amendment was not dependent on the existence of those proceedings. Furthermore, although

properly determined that plenary review applied to the trial court's decision concerning the admissibility of expert testimony in connection with a summary judgment motion. *DiPietro* v. *Farmington Sports Arena, LLC*, 299 Conn. 920, 10 A.3d 1053 (2010).

the court's grant of permission to amend the pleadings enabled the summary judgment motion to be considered by the court because it permitted the defendants to move for judgment on the ground of res judicata, the existence of the summary judgment proceedings did not affect the defendants' usual burden of proof with respect to the granting of an amendment to their special defenses. Accordingly, we will review the plaintiffs' claim under the abuse of discretion standard.

"It is well settled that whether to allow an amendment to the pleadings rests within the discretion of the trial court." *Miller* v. *Fishman,* 102 Conn. App. 286, 291, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008). "The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial. . . . The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case." (Citation omitted; internal quotation marks omitted.) *Canterbury* v. *Deojay,* supra, 114 Conn. App. 705.

Here, the plaintiffs have failed to demonstrate prejudice resulting from the defendants' delay in raising their defense of res judicata. "The law is well-settled that belated amendments to the pleadings rest in the sound discretion of the trial court." *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 216, 455 A.2d 857 (1983). This discretion may be exercised before, during or after trial. *Stafford Higgins Industries, Inc.* v. *Norwalk,* 245 Conn. 551, 575–76, 715 A.2d 46 (1998) (trial court should have permitted complaint to be amended posttrial to conform to proof during trial). Absent evidence of an abuse of discretion, we find no error in the court's ruling on the defendants' request to amend their answer and special defenses.

## II

The plaintiffs further claim that the trial court erred in applying the doctrine of res judicata to bar the present action. Specifically, the plaintiffs argue that *Nipmuc I* was limited to determining only the responsibilities of the escrow agent. The plaintiffs contend that their present claims focus on the alleged breach of a separate and distinct contractual undertaking by Roberts as part of an overarching fraudulent scheme, in which he was aided by the other defendants. In addition, the plaintiffs argue that the trial court erred in finding privity between the individual defendants and PDC-El Paso, a defendant in *Nipmuc I.*

At the outset, we note that "[o]ur review of [a] trial court's decision to render summary judgment is plenary, and in accordance with the standards set forth in Practice Book § 17-49." *Ventres* v. *Goodspeed Airport, LLC,* 301 Conn. 194, 205, 21 A.3d 709 (2011). In addition, "the applicability of res judicata . . . presents a question of law over which we employ plenary review." *Weiss* v. *Weiss,* 297 Conn. 446, 458, 998 A.2d 766 (2010).

The doctrine of res judicata, or claim preclusion, promotes judicial efficiency, establishes adjudicative consistency and avoids the vexation of litigants by precluding the splitting of actions that could be adjudicated together. *Isaac* v. *Truck Service, Inc.,* 253 Conn. 416, 422–23, 752 A.2d 509 (2000); see also 1 Restatement (Second), Judgments § 24 (1982). Under the doctrine, "a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action on the same claim." (Internal quotation marks omitted.) *Tirozzi* v. *Shelby Ins. Co.,* 50 Conn. App. 680, 685, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998). "The doctrine of res judicata is one of rest and is enforced on the ground of public policy. . . . If the same cause of action is again sued on, the judgment is conclusive

with respect to any claims relating to the cause of action which were actually made or might have been made." (Citation omitted.) *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973).

If the plaintiffs' present claims are to be barred under the doctrine of res judicata, all of the defendants in the present matter must be susceptible to the doctrine's application. The plaintiffs argue that the court erroneously found the individual defendants in privity with PDC-El Paso.

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." (Internal quotation marks omitted.) *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 600, 922 A.2d 1073 (2007). In their complaint, the plaintiffs alleged that the individual defendants were agents or authorized representatives of PDC-El Paso at "all times relevant," and the record reveals no evidence to the contrary.[8] See *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 561, 436 A.2d 24 (1980) (agents of same municipal corporation in privity with one another and municipality); see also 50 C.J.S. 480, Judgments § 1108 (2009) ("[a] judgment for the defendant in an action against an agent may generally be pleaded as a bar to a subsequent action for the same cause against the principal, and vice versa"); 50 C.J.S., supra, § 1109 ("[w]here a plaintiff in an action against an employee

---

[8] The plaintiffs urge us to consider portions of Roberts' deposition testimony. As this evidence was not before the trial court when it decided the motion for summary judgment, we will not consider it on appeal. *Fiorelli* v. *Gorsky*, 120 Conn. App. 298, 307 n.3, 991 A.2d 1105, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010).

is defeated on the merits, the judgment is generally regarded as a bar to a subsequent action against the employer, and vice versa"). Thus, we find no error in the court's determination that the individual defendants, as agents or representatives of PDC-El Paso, were in privity with PDC-El Paso, a defendant in the *Nipmuc I* action.

"Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the original claim, it is crucial to define the dimensions of that original claim. The Restatement (Second), Judgments provides, in § 24, that the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. In amplification of this definition of original claim, § 25 of the Restatement (Second) [of Judgments provides] that [t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action.

"The transactional test of the Restatement [(Second) of Judgments] provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include any claims relating to the cause of action which were actually made or might have been made. . . . In determining the nature of a cause of

action for these purposes, we have long looked to the group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and have noted that [e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." (Internal quotation marks omitted.) *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 348–49, 15 A.3d 601 (2011). "In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 123 Conn. App. 591.

A pragmatic comparison of the present complaint with the judgment and pleadings in *Nipmuc I* convinces us that this litigation arises out of the same common nucleus of facts as the *Nipmuc I* action. It is apparent that the claims in both the present matter and *Nipmuc I* stem from the same series of transactions, namely, the negotiation, execution, review and performance, or lack thereof, of the sale and leaseback agreement. Furthermore, both in the present matter and *Nipmuc I* the plaintiffs seek redress based on their allegedly wrongful prohibition from use of the fifty-two acre parcel as a result of the siting council's rejection of the lease and its order transferring the fifty-two acre parcel to Meriden.

The plaintiffs' additional claims of fraudulent and tortious business conduct by the defendants relate to their alleged failure to negotiate with, and lack of approval by, the siting council, and the consequent lack of performance of the lease. The plaintiffs' contractual claims against Roberts concern his actions before the siting council during its review of the lease and arise out of an alleged contractual undertaking that he entered into with the plaintiffs at the time the sale and leaseback agreement was negotiated.

The complaint in *Nipmuc I* alleged that "PDC-El Paso and Meriden Gas Turbine[s] told [Nipmuc] that they would present the [l]ease, and that [Nipmuc] should not appear before the [siting council]. However, [Nipmuc] became concerned PDC-El Paso and Meriden Gas Turbine[s] had not made a full disclosure of [Nipmuc's] leasehold interest to the [siting council]." Moreover, the complaint in *Nipmuc I* further alleged that "[Nipmuc] believes that PDC-El Paso has concealed from the [siting council] in PDC-El Paso's original submissions that PDC-El Paso's right to purchase the [l]arger [p]arcel was subject to the obligation to deed out [thirty] acres of the [l]arger [p]arcel to Summitwood's designee. [Nipmuc] believes that PDC-El Paso and the Meriden Gas Turbine[s] failed to properly disclose and present to the [siting council] after January 10, 2001, that the deed of the [l]arger [p]arcel to Meriden Gas Turbine[s] was subject to the [l]ease."

In reaching its judgment, the *Nipmuc I* court thus examined the same nucleus of facts at issue here, including the negotiation of the sale and leaseback agreement and the siting council's subsequent review and rejection of the lease. It is apparent that the plaintiffs' claims relate in time, space, origin and motivation to those claims raised and decided in *Nipmuc I*. Moreover, it is clear that *Nipmuc I* and the present matter form a convenient trial unit, with overlapping witnesses and evidence.[9]

"The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." (Internal quotation marks omitted.) *New England Estates, LLC* v. *Branford*, 294 Conn. 817, 842,

[9] In fact, Roberts testified during the *Nipmuc I* proceedings. *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, supra, Superior Court, Docket No. CV-02-0281664-S.

988 A.2d 229 (2010). "[T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding* . . . ." (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 43–44, 694 A.2d 1246 (1997). The plaintiffs had an adequate opportunity to litigate their present claims in *Nipmuc I* and failed to do so. Accordingly, the court's rendering of summary judgment was proper.

The judgment is affirmed.

In this opinion the other judges concurred.