J-S52039-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAGENZA JUNIOUS, | : | |
| | : | |
| Appellant | : | No. 284 MDA 2018 |

Appeal from the PCRA Order January 18, 2018
in the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0000639-2013

BEFORE:   BENDER, P.J.E., MCLAUGHLIN, J. and STRASSBURGER,J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 30, 2018**

Lagenza Junious (Appellant) appeals *pro se* from the January 18, 2018 order, which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

We provide the following background.  On February 17, 2015, Appellant entered into a negotiated guilty plea to a series of charges stemming from his actions on December 20, 2012.  Early that morning, Appellant forcibly entered the home of his former romantic partner, Adreanne Evans, shot her twice, and killed her.  In addition, Appellant shot and injured Sterling Brown, Adreanne's then romantic partner.  Also present were Sage Evans, Adreanne's mother, and the infant child of Appellant and Adreanne.  Appellant was charged with murder, attempted murder, aggravated assault, burglary, persons not to possess firearms, and three counts of recklessly endangering another person

---

* Retired Senior Judge assigned to the Superior Court.

(REAP). The Commonwealth filed notice of its intent to seek the death penalty.

Pursuant to a negotiated plea agreement, Appellant pleaded guilty to a sentence of life in prison without parole (LWOP) in exchange for the Commonwealth no longer seeking the death penalty. Sentencing on the remaining charges would be left to the trial court's discretion. On February 17, 2015, the trial court accepted Appellant's guilty plea and imposed an aggregate term of 20 to 40 years of incarceration on the remaining charges to be served consecutively to the LWOP sentence.

Appellant timely filed a post-sentence motion seeking reconsideration of the non-negotiated portion of his sentence. That motion was denied, and Appellant appealed to this Court. On appeal, this Court affirmed Appellant's judgment of sentence, and our Supreme Court denied Appellant's petition for allowance of appeal. **Commonwealth v. Junious**, 141 A.3d 593 (Pa. Super. 2016) (unpublished memorandum), *appeal denied*, 141 A.3d 479 (Pa. 2016).

On April 19, 2017, Appellant *pro se* timely filed a PCRA petition. In that petition, Appellant claimed that his guilty plea was entered involuntarily and unknowingly due to the ineffective assistance of trial counsel. **See** PCRA Petition, 4/19/2017, at ¶ 5. The PCRA court appointed Attorney Jennifer E. Tobias to represent Appellant. On July 11, 2017, Attorney Tobias filed a petition to withdraw as counsel, after concluding that the allegations of ineffective assistance of counsel set forth by Appellant in his petition lacked

merit.[1]  On October 30, 2017, the PCRA court entered an order granting counsel's petition to withdraw after agreeing with counsel that Appellant's issues lacked merit.  The PCRA court provided notice pursuant to Pa.R.Crim.P. 907 of its intention to dismiss Appellant's petition within 20 days.  Appellant *pro se* filed a response, which included a claim that Attorney Tobias was ineffective in her PCRA representation.  On January 18, 2018, the PCRA court entered an order dismissing Appellant's petition.  Appellant timely filed a notice of appeal, and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

On appeal, Appellant sets forth a number of issues for review. **See** Appellant's Brief at 4-5.  As all of the issues involve review from the denial of a PCRA petition, the alleged ineffective assistance of counsel, and Appellant's guilty plea, we set forth the following principles.

In reviewing an appeal from the denial of PCRA relief, "[w]e must examine whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Mikell**, 968 A.2d 779, 780 (Pa. Super.

---

[1] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) (setting forth the procedures and requirements for withdrawing as counsel at the post-conviction stage).

2009) (quoting **Commonwealth v. Lawrence**, 960 A.2d 473, 476 (Pa. Super. 2008) (citations omitted)).

Where Appellant is claiming trial and PCRA counsel were ineffective, we observe that

> [i]t is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

**Commonwealth v. Franklin**, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted). In addition, because Appellant entered into a guilty plea, we keep in mind the following.

> The right to the constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea.
>
> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely

refers to a probability sufficient to undermine confidence in the outcome.

Our Supreme Court also has held as follows:

> Central to the question of whether [a] defendant's plea was entered voluntarily and knowingly is the fact that the defendant know and understand the nature of the offenses charged in as plain a fashion as possible…. [A] guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, … a trial judge [and, by extension, plea counsel] is not required to go to unnecessary lengths to discuss every nuance of the law regarding a defendant's waiver of his right to a jury trial in order to render a guilty plea voluntary and knowing.

*Commonwealth v. Barndt*, 74 A.3d 185, 192-93 (Pa. Super. 2013) (citations and quotation marks omitted).

We now turn to the issues Appellant sets forth for our review, beginning with Appellant's contention that trial counsel was ineffective because counsel allegedly threatened to "withdraw from the case if [Appellant] continued to insist on going to trial." Appellant's Brief at 18. According to Appellant, it was these threats that caused him to enter into an involuntary guilty plea because counsel would not prepare for trial. *Id*. at 19.

Our review of the record reveals that the trial court appointed the Office of the Public Defender to represent Appellant, and two attorneys, Paul Muller, Esquire, and Jessica Bush, Esquire, acted as co-counsel on Appellant's behalf. On May 6, 2014, Attorneys Muller and Bush filed a motion to withdraw. According to counsel, Appellant had filed a complaint with the Disciplinary

Board of the Supreme Court of Pennsylvania asserting that both counsel were ineffective. Thus, counsel requested that they be permitted to withdraw.[2]

The trial court held a hearing on the petition on November 14, 2014. Appellant had the opportunity to explain to the trial court why he was dissatisfied with the representation,[3] and counsel had the opportunity to explain to the trial court what they had done to prepare the case.[4] In the end, the trial court denied the motion to withdraw as counsel, concluding it was "satisfied with the representation that has occurred to this point in time." N.T., 11/14/2014, at 15. At no point during that hearing did Appellant ever claim that counsel had threatened him in any respect.

Subsequently, at Appellant's plea hearing, he was asked whether "anyone made any threats or promises to [him] in order to get [him] to accept this plea and plead guilty[.]" N.T., 2/17/2015, at 13. Appellant responded, "No." *Id*. at 14. Based upon the foregoing, the record does not support any

---

[2] At this point, the Commonwealth was still seeking the death penalty.

[3] Appellant set forth a litany of complaints about counsels' representation, including their failing to hire a private investigator, failing to prepare a defense, and trying to convince Appellant to take a plea deal instead of going to trial. *See* N.T., 11/14/2014, at 3-8.

[4] Counsel explained to the trial court that they used staff investigators from the Office of the Public Defender, had hired a mitigation specialist at extra expense, and hired a clinical psychologist, Dr. Frank Dattilo, to perform an evaluation. In addition, the mitigation specialist prepared "a voluminous mitigation report, [which included] interviews with dozens and dozens of witnesses and file folders full of supplementary material." N.T., 11/14/2014, at 11.

suggestion that trial counsel made any threats to Appellant as he claimed.  In fact, the record fully supports a conclusion that counsel had prepared extensively for trial, but Appellant decided to plead guilty. ***See id***. at 19 (explaining that he is "taking this plea of life so [he doesn't] take [the victim's mother] through the trial herself").   Thus, we agree with the PCRA court that there is no arguable merit to Appellant's claim of ineffective assistance of counsel on this basis.   Therefore, the PCRA court did not err in denying Appellant relief.

Appellant next claims that trial counsel was ineffective for failing to investigate and prepare defenses.[5] Appellant's Brief at 21-24.   According to

_____

[5] To the extent Appellant is claiming that counsel did not prepare any defenses, the record does not support that claim.  During Appellant's plea hearing, counsel presented the following information to the trial court about the defenses that could have been presented on Appellant's behalf.

> Just briefly, on behalf of [Appellant].  Had we been prepared to go to trial on this matter – and he does understand that we were going to be picking a jury today – that we would have been presenting a defense that he was intoxicated at the time of the murder.  There was evidence that he had been drinking heavily for days before the incident including the day before the incident.
>
> He does understand that there were some problems with that defense, especially since you heard the suppression hearing, Your Honor, that they did test his alcohol at the hospital, which did not reveal any alcohol at the time of the testing.
>
> However, it wouldn't have revealed that he could have been under the influence of some kind of alcohol at the time of the murder. Whether it was to justify it to third[-]degree murder, it

Appellant, counsel did not investigate a "heat of passion defense theory." *Id*.

at 21. Appellant argues that he was so impassioned when he found Adreanne

"in bed with her lover" that "he had no time to reflect and acted out of rage."

*Id*. at 22.

> A heat of passion defense is a partial defense that addresses the element of intent and, if successfully argued, mitigates first-degree murder to third-degree murder.[6] *See* [*Commonwealth*] *v. Hutchinson*, [] 25 A.3d 722, 314 ([Pa.] 2011). It seeks to show that the defendant is guilty of voluntary manslaughter, not murder, by proving that at the time of the killing he or she was acting under a sudden and intense passion resulting from serious

---

> would have been up to the jury, and he recognizes the problem with that.

> He did want me to reiterate to the [c]ourt, to the victims' family, that he was not in his right mind at the time of the crime; that he was intoxicated; but that he is willing to accept the negotiated plea agreement in order to avoid the death penalty, and willing to plead to first[-]degree murder.

> It was further explained to him that the Commonwealth would have presented [] a jury instruction to the jury that if a firearm was used on a vital part of the body, that you can infer specific intent. And I did explain that to him, being the nature of the injuries for Adreanne, that it could have been specific intent to kill.

N.T., 2/17/2015, at 17-18.

[6] We point out that this sentence is legally incorrect, is dictum, and it is the only Supreme Court case that sets forth this proposition. As evidenced both by *Hutchinson*, 25 A.3d at 314 (stating that "[a] defendant accused of murder may establish that he or she is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he or she was acting under a sudden and intense passion resulting from serious provocation by the victim"), and the sentence and statute that follows, it is clear that a heat of passion defense mitigates first-degree murder to voluntary manslaughter.

provocation by the victim. **See** 18 Pa.C.S. § 2503(a) ("[a] person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by ... the individual killed.").

In order to successfully argue heat of passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man [or woman] who was confronted with the provoking events would become impassioned to the extent that his [or her] mind was incapable of cool reflection, and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing.

**Commonwealth v. Mason**, 130 A.3d 601, 627-28 (Pa. 2015) (some citations omitted).

In this case, Appellant and Adreanne "lived in adjoining apartments." N.T., 2/17/2015, at 14. Appellant forced his way into Adreanne's apartment with a gun. **Id**. Based upon these facts, it is clear that it was Appellant, not the victim, who provoked the situation. Accordingly, there is no arguable merit to the contention that counsel should have pursued a heat of passion defense. Thus, Appellant is not entitled to relief on this basis.

In his next claim, Appellant sets forth several arguments surrounding the trial court's actions in adducing the factual basis for his guilty plea.[7] **See**

---

[7] Appellant also claims that trial counsel was ineffective for not informing him of various aspects of the law that would have been available to him on appeal had he been sentenced to death following a trial. **See** Appellant's Brief at 26. Appellant did not present this issue in his PCRA petition; therefore, it is waived. **See Commonwealth v. Paddy**, 15 A.3d 431, 446 (Pa. 2011) ("Failure to raise an issue before the PCRA court results in waiver."). However, even if Appellant did not waive this issue, he would not be entitled to relief.

Appellant's Brief at 24-26. Appellant argues that "no contemporaneous dialogue occurred between the [trial court] and Appellant" and therefore he "did not have an understanding of the charges against him in the context of law and relation to the facts." *Id*. at 25. He goes onto complain that although he "understood the facts that he was responsible for the death of a person[,]" he was "unable to understand the Commonwealth's narration and characterization that formed a specific intent to kill." *Id*. at 25. He further claims that he "did not receive the Commonwealth's narrative of events until the day of [the] plea colloquy." *Id*. Moreover, Appellant suggests that the "Commonwealth presented no admissible evidence on-the-record in support of the charges" and therefore "a manifest injustice occurred." *Id*. In addition, Appellant argues that direct appeal counsel was ineffective for failing to raise on appeal this trial court error. *Id*. at 30-31.

"The factual basis requisite is among six elements, which … this Court has maintained are essential to a valid plea colloquy. *See* Pa.R.Crim.P. 590(A)(2) (comment)." *Commonwealth v. Flanagan*, 854 A.2d 489, 500 (Pa. 2004). "Although this Court has stressed its strong preference for a

---

At Appellant's plea and sentencing hearing, he explained that the reason he was pleading guilty was not due to "a fear of going to death row," but was because it was his "way of trying to take responsibility." N.T., 2/17/2015, at 28. Thus, even if counsel had explained to Appellant his rights available had he been sentenced to death, Appellant's own words make clear that it would not have changed his decision to plead guilty, and therefore the outcome would not have been different. Thus, he would not be entitled to relief.

dialogue in colloquies with meaningful participation by the defendant throughout, there is no set manner, and no fixed terms, by which [a] factual basis must be adduced." *Id*.

Instantly, at the plea hearing, the Commonwealth set forth the facts which formed the basis of the plea. *See* N.T., 2/17/2015, at 14-15. Appellant was then asked whether he understood the facts as they were presented. *Id*. at 15. Appellant responded, "Yes." *Id*. Appellant was then asked whether he admitted those facts. Appellant responded, "Somewhat." *Id*. at 16. The Commonwealth then told Appellant he needed to respond either yes or no. After consulting with Attorney Bush, Appellant responded, "Yes." *Id*. This exchange, which included Appellant having the opportunity to consult his attorney, reveals that Appellant did indeed engage in meaningful dialogue.

Moreover, Appellant has not identified which facts were either incorrect or misunderstood by him. In addition, the facts match those set forth in the criminal complaint. *See* Criminal Complaint, 12/20/2012. To the extent Appellant claims that the trial court, not the Commonwealth, was required to set forth the facts, he is incorrect. *See* Appellant's Brief at 25; PCRA Petition, 4/19/2017, at 8. The rules provide that "[i]t is advisable that the judge conduct the examination of the defendant. However, paragraph (A) does not prevent defense counsel or the attorney for the Commonwealth from conducting part or all of the examination of the defendant, as permitted by the judge." Pa.R.Crim.P. 590 (comment). Additionally, the rules do not

require that the Commonwealth present admissible evidence during a guilty plea colloquy.

Based on the foregoing, there is no arguable merit to Appellant's position regarding any error in adducing the factual basis of his plea. Thus, trial counsel was not ineffective. In addition, because the trial court committed no error, direct appeal counsel was not ineffective for failing to raise this issue on appeal. "Counsel will not be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Spotz*, 896 A.2d 1191, 1210 (Pa. 2006). Accordingly, Appellant is not entitled to relief on either of these issues.

Appellant next contends trial counsel was ineffective for failing to call an expert to testify to Appellant's "diminished capacity due to mental defect/illness, voluntary intoxication, or heat of passion." Appellant's Brief at 28. It is not clear from Appellant's brief whether he is arguing that trial counsel was ineffective for failing to call Dr. Dattilo to testify at trial or at the plea/sentencing hearing. However, at the plea hearing, Appellant acknowledged that he understood that he was giving up the right "to present evidence on [his] own behalf." N.T., 2/17/2015, at 11. In addition, Attorney Bush stated the following with respect to mitigation evidence at sentencing.

> Your Honor, I did ask [Appellant] if he wanted me to present to the [trial court] or for the record any of the mitigation that we were prepared to put forth on his behalf. He does not wish me to include that at this point.
>
> I do believe he does want to address the [trial court].

- 12 -

*Id*. at 18-19.

Appellant then went on to explain to the trial court why he had decided to plead guilty. *Id*. at 19-21. Based on the foregoing, it is clear that Appellant had the option to present additional information at sentencing, but chose not to do that. We agree with the PCRA court that he cannot now claim that trial counsel was ineffective for failing to present information he did not wish to present in the first place. *See* PCRA Court Opinion, 10/30/2017, at 5. Thus, Appellant is not entitled to relief.

Finally, Appellant claims that Attorney Tobias was ineffective in her representation of Appellant during these PCRA proceedings. Specifically, Appellant argues Attorney Tobias was ineffective because she did not contact him prior to preparing her *Turner*/*Finley* no-merit letter.[8] Appellant's Brief at 16. According to Appellant, "counsel's failure to communicate" effectively denied him the right to counsel. *Id*. Appellant further claims the PCRA court erred in dismissing his petition without affording him an opportunity to amend his PCRA petition due to counsel's failure to communicate. *Id*. at 32.

We observe that Appellant had the opportunity to identify additional issues Attorney Tobias should have included in her no-merit letter in his *pro*

---

[8] Appellant has preserved this issue by presenting it both in his response to the PCRA court's Pa.R.Crim.P. 907 notice and his concise statement of errors complained of on appeal. *See Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*).

*se* response to the PCRA court. However, that response is merely a recap of the claims he presented in his *pro se* PCRA petition. ***See*** Objections, 11/15/2017. Thus, even if Attorney Tobias had communicated with Appellant prior to her filing the no-merit letter, the outcome would not be different because Appellant has not presented any additional issues.

Moreover, because we have determined that there is no arguable merit to any issue that was presented, the PCRA court did not err in either granting Attorney Tobias's petition to withdraw or dismissing Appellant's PCRA petition. Based upon our review of Appellant's *pro se* PCRA petition, counsel's petition to withdraw and no-merit letter, Appellant's *pro se* response, and the PCRA court's opinion, we conclude that the PCRA court did not err in denying Appellant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2018