******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# THE CARABETTA ORGANIZATION, LTD., ET AL.
## *v.* CITY OF MERIDEN ET AL.
### (AC 41688)

Alvord, Devlin and Pellegrino, Js.

*Syllabus*

The plaintiffs brought this action claiming that the defendant city of Meriden and the defendant T Co. conspired to secure the defeat of the plaintiffs' effort to obtain approval of a certain leaseback agreement for a fifty-two acre portion of certain real property that the plaintiffs had sold to P Co., which sought to build a power plant on the property. The lease agreement was to be granted subject to its being approved by the Connecticut Siting Council as part of the power plant project. After P Co. sold the property to another entity, the Connecticut Siting Council approved the power plant project but rejected the leaseback agreement and conditioned approval of the project on the transfer of the fifty-two acres to the city, which thereafter redesignated the fifty-two acres as open space. The plaintiffs previously had brought four unsuccessful actions against, inter alia, T Co. and the city in federal and state court seeking to effectuate the lease. The trial court granted the defendants' motion for summary judgment, concluding that the plaintiffs' claims were barred by the doctrine of res judicata. The court determined that the lease was the same one involved in the plaintiffs' prior lawsuits against the city, in which the plaintiffs tried to force the city to recognize the lease, and that the only new claim against T Co. was that it orchestrated the defeat of the plaintiffs' effort to obtain approval from the Connecticut Siting Council. The court rendered judgment for the defendants, and the plaintiffs appealed to this court, claiming that the trial court improperly concluded that res judicata barred their claims. *Held* that the trial court properly rendered summary judgment for the defendants, as the plaintiffs' claims stemmed from the same agreement pertaining to the lease and sought redress on the basis of the same underlying factual predicate, which was the Connecticut Siting Council's rejection of their efforts to effectuate the lease, and, despite the plaintiffs' assertion that their claims were founded on different types of conduct by different defendants and the different effects of that conduct, they had ample opportunity to bring their claims in any or all of the four prior actions they brought against multiple entities under multiple theories of liability that allegedly resulted in or stemmed from the plaintiffs' failure to acquire the lease of the fifty-two acres.

Argued November 18, 2019—officially released February 25, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged violation of state antitrust law, and for other relief, brought to the Superior Court in the judicial district of New Haven at Meriden and transferred to the judicial district of Hartford, Complex Litigation Docket, where the court, *Moukawsher, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed*.

*Dominic J. Aprile*, for the appellants (plaintiffs).

*Katherine E. Rule*, with whom, on the brief, were *Thomas R. Gerarde* and *Dominick Caruso*, for the appellees (named defendant et al.).

*John R. Fornaciari*, pro hac vice, with whom, on the brief, were *Daniel J. Krisch* and *Carl R. Ficks, Jr.*, for

the appellees (defendant Tilcon, Inc., et al.).

*Opinion*

DEVLIN, J. In this case arising from a dispute that originated more than twenty years ago, the plaintiffs, The Carabetta Organization, Ltd., Summitwood Development, LLC (Summitwood), and Nipmuc Properties, LLC (Nipmuc), appeal from the summary judgment rendered by the trial court in favor of the defendants, the city of Meriden, Dominick Caruso, Tilcon, Inc., and Tilcon Connecticut, Inc. (Tilcon). The plaintiffs claim that the court erred in concluding that their claims were barred by the doctrine of res judicata. We affirm the judgment of the trial court.[1]

The trial court set forth the following relevant factual and procedural history: "Twenty-five years ago, [the plaintiffs][2] owned a large piece of land in Meriden. [They] wanted to dig gravel out of it prior to developing the land. [They were] allowed to begin but then excavation was blocked when a series of private lawsuits overturned local zoning decisions. [The plaintiffs] believed [that] the lawsuits were the handiwork of [their] gravel competitor and one of the defendants in this case, Tilcon. In the name of a company called Meadow Haven, [the plaintiffs] sued Tilcon in a federal [Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.] and antitrust lawsuit, claiming there, as [they do] here, that Tilcon orchestrated a conspiracy to keep [the plaintiffs] out of the gravel business. [The plaintiffs] lost. [See *A. Aiudi & Sons* v. *Tilcon Connecticut, Inc.*, Docket No. 3:94 Civ. 1895 (AVC), slip op. 1 (D. Conn. March 21, 1996) (adopting recommended ruling, slip op. 21–24 (D. Conn. September 22, 1995)), aff'd, Docket No. 96-7460, 1997 WL 50010 (2d Cir. January 17, 1997)].

"[The plaintiffs] then sold the 845 acre property to a company called PDC-El Paso Meriden [El Paso] under an agreement that allowed [the plaintiffs] to lease back fifty-two acres. The lease was to be granted subject to one condition: that the Connecticut Siting Council [Siting Council] approved the lease as part of the power plant project [that] El Paso hoped to build and the Siting Council had to approve under General Statutes § 16-50g et seq. El Paso ultimately sold the land subject to the lease deal to a company called Meriden Gas Turbines.

"[The plaintiffs] pressed [their] rights . . . [and] asked the . . . Siting Council to approve the leaseback. Ultimately, the Siting Council approved the power plant in 2001 but rejected the leaseback, conditioning approval instead on the fifty-two acres being given to Meriden.

"The [plaintiffs] have been suing over the lease ever since, and this case is another instance. Having failed to get the lease effectuated by suing Meriden, El Paso, and Meriden Gas Turbines,[3] [the plaintiffs] now [sue] Meriden and Tilcon for the loss of the lease and the redesignation of the land on Meriden's plan of develop-

ment. [The plaintiffs claim that] there was a conspiracy headed by Tilcon and acted on by Meriden to secure, among other things, [the plaintiffs'] Siting Council defeat. The lease at issue here is the same one involved in the prior lawsuit against Meriden, and the only thing different here from the prior federal lawsuit against Tilcon is the additional claim that Tilcon orchestrated the Siting Council defeat, too.

"With the possible exception of newer claims about Meriden's adoption of a development plan redesignating the fifty-two acres for open space, the claims made now against Meriden about the lease could have been brought in the prior lawsuit against the city when [the plaintiffs] tried to force Meriden to recognize the lease. They arise from the same transaction. And [the plaintiffs have] offered allegations, but no evidence, that shows [that] some form of fraud or concealment prevented [the plaintiffs] from knowing of Tilcon's alleged interactions with the city. Far from it—[the plaintiffs'] claims about Tilcon's behind-the-scenes efforts were the focus of [their] prior federal lawsuit. [The plaintiffs have] always alleged [that] Tilcon conspired against [them], as [they do] now. [The plaintiffs'] exhibits show [that] essentially the same witnesses and the same activities are in play here as they have been time and again in this multidecade assault. The only thing new is the claim about the Siting Council against Tilcon and the development plan in Meriden. Therefore, under the detailed analysis of the Appellate Court's 2011 . . . decision [in *Nipmuc Properties*, *LLC* v. *Meriden*, 130 Conn. App. 806, 25 A.3d 714 (*Nipmuc II*), cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied, 565 U.S. 1246, 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012), the claims against Meriden and Caruso concerning the Siting Council are barred here by the doctrine of claim preclusion." (Footnotes added; footnotes omitted.) Accordingly, the court granted the defendants' motion for summary judgment, and this appeal followed.

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . Additionally, the applicability of res judicata . . . presents a question of law over which we employ plenary review. . . .

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or *which might have been made*. . . .

"We have adopted a transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata. [T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 811–13.

"Res judicata, or claim preclusion, bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action . . . which might have been made. . . . [T]he appropriate inquiry with respect to [claim] preclusion is whether the party had an *adequate opportunity to litigate the matter in the earlier proceeding* . . . ." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 815.

As noted, the conflict that gives rise to the current action, and this appeal, has already been the subject of three decisions by this court. In the most recent decision, *Nipmuc II*, on which the trial court here relied in rendering summary judgment, this court concluded that the plaintiffs had been afforded the opportunity to litigate their claims regarding the lease at issue and were thus precluded from doing so again. In *Nipmuc II*, this court compared the complaint in that case to the operative complaint in the earlier case of *Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC*, 103 Conn. App. 90, 927 A.2d 978 (*Nipmuc I*), cert. denied, 284 Conn. 932, 934 A.2d 247 (2007), and concluded that the claims asserted in both actions arose out of the same transaction or series of transactions, namely, the

plaintiffs' purported leasehold interest in the same fifty-two acre parcel of land. Id., 813. The court in *Nipmuc II* explained: "It is apparent from our review of the record that the plaintiffs' claims in the present action, seeking to effectuate the turnover of their purported leasehold interests, and their claims in *Nipmuc I*, seeking the release of the lease from escrow, stem from the same agreement pertaining to that lease and seek redress on the basis of the same underlying factual predicate, namely, the [S]iting [C]ouncil's decision rejecting the plaintiffs' efforts to obtain the release of the lease from escrow and ordering the transfer of the fifty-two acre parcel to the defendant. Similarly, the plaintiffs' claim that the parties to the underlying lease agreement intended for the lease to have operative effect regardless of physical possession of the lease document arises from the same common nucleus of facts as set forth in the *Nipmuc I* action. . . . The *Nipmuc I* action provided the plaintiffs ample opportunity to raise their claim to an independent leasehold interest, separate and apart from the escrowed lease document considered in *Nipmuc I*, against Meriden Gas Turbines, the defendant's predecessor in interest to the fifty-two acre parcel. . . . Moreover, a pragmatic view of the record convinces us that the *Nipmuc I* action and the present matter form a convenient trial unit, involving a significant overlap of potential witnesses and evidence, and that treatment as a unit would conform to the parties' expectations and business understanding. Accordingly, because the plaintiffs' present claims arise from the same common nucleus of operative facts as the claims raised in *Nipmuc I*, and because the plaintiffs could have raised their present claims in the *Nipmuc I* action, they are now precluded from raising such claims in the present matter. Therefore, the court properly rendered summary judgment in this case." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 815–16.

Here, as in *Nipmuc I* and *Nipmuc II*, the plaintiffs' claims again "stem from the same agreement pertaining to [the] lease [at issue] and seek redress on the basis of the same underlying factual predicate, namely, the [S]iting [C]ouncil's decision rejecting the plaintiffs' efforts to obtain the release of the lease from escrow and ordering the transfer of the fifty-two acre parcel to [Meriden]." Id., 815. To the extent that the plaintiffs argue that their claims in this action "are founded on different types of conduct by different defendants and the different effects of that conduct," they cannot escape the trial court's conclusion that, as this court reasoned in *Nipmuc II*, they have had ample opportunity to bring their claims in any or all of their four prior court actions.[4] As the trial court aptly found, the plaintiffs have already complained in court—state and federal—against multiple entities under multiple theories of liability that allegedly resulted in or stemmed

from their failure to acquire the lease of the fifty-two acres at issue. Accordingly, we agree with the trial court that the plaintiffs' claims are barred by res judicata and, thus, that the court properly rendered summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Because we agree with the trial court that the plaintiffs' claims were barred by res judicata, we need not reach their additional claim that the court erred in concluding that the defendants were entitled to judgment as a matter of law because the plaintiffs failed to present sufficient evidence to establish a prima facie case. For that same reason, we do not reach the defendants' claimed alternative grounds for affirmance, namely, that the plaintiffs' claims were barred by the statute of limitations, the *Noerr-Pennington* doctrine; see *United Mine Workers* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965); *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961); their lack of antitrust standing, and the lack of the requisite statutory notice on their request for indemnification.

[2] The trial court stated that, "because all of the [plaintiff] companies share common leadership and management within the [Carabetta] family," it would refer to the plaintiffs collectively. For ease of reading, we do the same.

[3] The trial court referred to and summarized three previous cases that the plaintiffs had filed in state court as follows: "*Summitwood Development, LLC* v. *Roberts*, 130 Conn. App. 792, 25 A.3d 721, cert. denied, 302 Conn. 942, 29 A.3d 467 (2011), cert. denied, 565 U.S. 1260, 132 S. Ct. 1745, 182 L. Ed. 2d 530 (2012), where Summitwood sued the company that promised the lease and its agents for failing to provide it;

"*Nipmuc Properties, LLC* v. *PDC-El Paso Meriden, LLC,* 103 Conn. App. 90, 927 A.2d 978, cert. denied, 284 Conn. 932, 934 A.2d 247 (2007), where Nipmuc sued Meriden and others for a court order declaring the lease to be in effect and requiring the lease to be delivered to Nipmuc; [and]

"*Nipmuc Properties, LLC* v. *Meriden*, 130 Conn. App. 806, 25 A.3d 714, cert. denied, 302 Conn. 939, 28 A.3d 989 (2011), cert. denied, 565 U.S. 1246, 132 S. Ct. 1718, 182 L. Ed. 2d 253 (2012), where Nipmuc, along with Summitwood, again sued to enforce the lease and to quiet the title of the land to recognize the lease."

[4] In an apparent attempt to challenge the trial court's conclusion that Caruso was not in privity with the Meriden defendants in the prior actions, the plaintiffs have done nothing more than set forth legal authority that not all employees are in privity with their employers. In the absence of any supporting analysis that is specific to this case or their claims against Caruso, this claim fails.

——————————————