OMER DUHAIME *v.* AMERICAN RESERVE LIFE
INSURANCE COMPANY
(12808)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 29—decision released July 1, 1986

*Ronald E. Cassidento,* with whom, on the brief, was *Eric Carlson,* law student intern, for the appellant (plaintiff).

*Sharon S. Tisher,* with whom was *Kim M. Cooke,* for the appellee (defendant).

PETERS, C. J. The dispositive issue in this case is whether a litigant, after a final judgment on the merits of his contractual claim against an insurance company, is barred, by the principles of res judicata, from thereafter pursuing a second cause of action against the same insurance company under the Connecticut Unfair Trade Practices Act (CUTPA).[1] In the present cause of action, the plaintiff, Omer Duhaime, alleged that the defendant, American Reserve Life Insurance Company, had violated CUTPA by its wrongful refusal to pay the plaintiff moneys to which he was entitled under a disability insurance policy issued by the defendant. In the trial court, the defendant successfully moved for summary judgment on the ground of res judicata, and the plaintiff has appealed from this judgment. We find no error.

The facts are undisputed. On March 14, 1978, the plaintiff obtained a disability insurance certificate from the defendant for indemnity payments in the event that the insured became totally disabled. The insurance policy had a clause excluding coverage for a preexisting disability. A few days prior to the issuance of the policy, the plaintiff had stopped working because of a chronic respiratory ailment. He became totally disabled as a result of an accidental fall on September 22, 1978.

The defendant denied payment of the plaintiff's claim under the insurance policy. The defendant maintained that it was not obligated to indemnify the plaintiff

---

[1] The Connecticut Unfair Trade Practices Act (CUTPA) is contained in General Statutes §§ 42-110a through 42-110q inclusive.

under its disability policy because the defendant had already become totally disabled, by virtue of his respiratory ailment, prior to the effective date of his insurance coverage.

In the plaintiff's first cause of action, he sued the defendant for wrongful denial of insurance benefits in breach of the terms of the insurance contract. That case, which was tried to the court, *Barall, J.*, resulted in a judgment on the merits for the plaintiff, the trial court therein having determined that the plaintiff was not totally disabled until he injured his back when he fell on September 22, 1978. The trial court awarded the plaintiff $2380.28, which the defendant paid.

In the plaintiff's second cause of action, he sued the defendant under CUTPA, alleging that the defendant's refusal to honor its obligations under its disability insurance policy was wholly "without good faith or valid defense" and hence an unfair trade practice in violation of General Statutes § 42-110b.[2] This cause of action had precisely the same factual predicate as did the first cause of action. In response to questioning at a depo-

---

[2] General Statutes § 42-110b provides: "UNFAIR TRADE PRACTICES PROHIBITED. LEGISLATIVE INTENT. (a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

"(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

sition taken to investigate the basis for the second cause of action, the plaintiff consistently reverted to the fact of the defendant's erroneous reliance on the insurance policy's preexisting disability clause. He proffered no other factual allegations to support his claims that the defendant's conduct manifested lack of good faith, absence of a valid defense, or fraud. In his opposition to the defendant's motion for summary judgment on the CUTPA cause of action, the plaintiff relied on the unsupported assertion that "it would have been inappropriate for [the] plaintiff to bring the present CUTPA action as part of the earlier litigation on the contract." In contravention to the requirements of Practice Book § 380,[3] the plaintiff submitted no affidavits, documents or exhibits to support his objection to the defendant's motion.

The trial court, *M. Hennessey, J.,* concluded that the defendant was entitled to summary judgment because of res judicata. The court held that the plaintiff's CUTPA claim arose out of the same facts litigated in the plaintiff's first action, and that the CUTPA claim might appropriately have been joined with the plaintiff's previously litigated claim for breach of contract. Accordingly, the court ruled that the plaintiff's present action was barred and that the defendant's motion for summary judgment should be granted. We agree.

Our rules of res judicata are based on the public policy that "a party should not be allowed to relitigate a mat-

---

[3] "[Practice Book] Sec. 380.—PROCEEDINGS UPON MOTION

"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the court otherwise directs. The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings."

ter which it already has had an opportunity to litigate." *In re Juvenile Appeal (83-DE)*, 190 Conn. 310, 318, 460 A.2d 1277 (1983); *Corey v. Avco-Lycoming Division*, 163 Conn. 309, 316–17, 307 A.2d 155 (1972), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973). "[T]he purpose of a law suit is not only to do substantial justice but to bring an end to controversy." James & Hazard, Civil Procedure (3d Ed. 1985) § 11.2, p. 590.

The principles that govern res judicata are described in Restatement (Second), Judgments (1982). The basic rule is that of § 18, which states in relevant part: "When a valid and final personal judgment is rendered in favor of the plaintiff: (1) [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment . . . . " As comment (a) to § 18 explains, "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." Our recent case law has uniformly approved and applied the principle of claim preclusion or merger. See *Gagne v. Norton*, 189 Conn. 29, 32, 453 A.2d 1162 (1983); *Corey v. Avco-Lycoming Division*, supra, 317.

Because the operative effect of the principle of claim preclusion or merger is to preclude relitigation of the "original claim," it is crucial to define the dimensions of that "original claim." The Restatement (Second), Judgments provides, in § 24, that "the claim [that is] extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined prag-

matically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." In amplification of this definition of "original claim," § 25 of the Restatement (Second) states that "[t]he rule of § 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action."

The transactional test of the Restatement provides a standard by which to measure the preclusive effect of a prior judgment, which we have held to include "any claims relating to the cause of action which were actually made or might have been made." *Corey* v. *Avco-Lycoming Division,* supra, 317; *Gagne* v. *Norton,* supra, 32. In determining the nature of a cause of action for these purposes, we have long looked to the "group of facts which is claimed to have brought about an unlawful injury to the plaintiff"; *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778 (1952); and have noted that "[e]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." Id.

Application of a transactional test requires the conclusion that the plaintiff's CUTPA claim is barred by res judicata. The plaintiff has consistently complained of the defendant's wrongful failure to honor its obligation to make payments in accordance with the terms of the disability insurance policy issued to the plaintiff. The plaintiff now claims a lack of good faith in the defendant's reliance on the policy's preexisting injury clause as a defense to its liability under the policy. This

claim, like the earlier claim that has merged into the plaintiff's judgment, turns on only one event: the defendant's refusal to pay in accordance with the terms of the disability insurance policy. It is of no moment that the plaintiff's original claim, on the insurance contract, alleged the breach of a common law duty, while the present CUTPA claim invokes an alleged right to statutory relief. *Burgess* v. *Vanguard Ins. Co.*, 192 Conn. 124, 126–27, 470 A.2d 244 (1984). In effect, the plaintiff is seeking to relitigate a single claim under a new theory in order to obtain an additional remedy, and this he may not do. *State* v. *Aillon*, 189 Conn. 416, 426–27, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983); *Bridgeport Hydraulic Co.* v. *Pearson*, supra, 198; see also *Lesley* v. *City of Montgomery*, 485 So. 2d 1088 (Ala. 1986); *Miller* v. *Lunnon*, 703 P.2d 640, 643 (Colo. App. 1985); *Wing* v. *Hulet*, 106 Idaho 912, 915–17, 684 P.2d 314 (1984); *Dill* v. *Avery*, 305 Md. 206, 502 A.2d 1051, 1052–55 (1986); *Mackintosh* v. *Chambers*, 285 Mass. 594, 596–97, 190 N.E. 38 (1934); *Anderson* v. *Werner Continental, Inc.*, 363 N.W.2d 332, 334–35 (Minn. App. 1985); *Smith* v. *Russell Sage College*, 54 N.Y.2d 185, 192–94, 429 N.E.2d 746, 445 N.Y.S.2d 68 (1981); *Troutman* v. *Erlandson*, 287 Ore. 187, 201–207, 598 P.2d 1211 (1979); *DePratt* v. *West Bend Mutual Ins. Co.*, 113 Wis. 2d 306, 310–13, 334 N.W.2d 883 (1983); *Rialto Theatre, Inc.* v. *Commonwealth Theatres, Inc.*, 714 P.2d 328, 335–38 (Wyo. 1986).

There is no error.

In this opinion the other justices concurred.