[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
This action arises out of an automobile accident involving the plaintiff's insured, Laura Sestito, and the defendant, Leslie Harrison, which occurred on October 10, 1988 in Norwalk, CT.
Following the accident, the plaintiff company indemnified its insured, Sestito, for property loss in the amount of CT Page 7153 $11,516.06. (While the complaint indicates Laura Sestito as the insured, the plaintiff's brief and supporting documents indicate that the owner of the vehicle and the person indemnified was Angelo Sestito. For purposes of this memorandum, these persons while be designated jointly as "Sestito").
Thereafter, the insured, Sestito, brought an action against the defendants, Leslie and James Harrison, claiming money damages for personal injury and property damage arising out of the automobile accident in question. (Sestito v. Harrison, DN CV 89 0098550, Superior Court for the Judicial District of Stamford/Norwalk). That action was settled by the parties and withdrawn by the plaintiffs, Sestito, in exchange for the payment by the defendants' insurance company, Atlantic Mutual, in the amount of $55,000.
A release agreement, signed by the parties in that action, stated that in consideration for the payment of $55,000.00, the plaintiffs Sestito released the Harrisons from any suit or causes of action with respect to any and all claims arising out of the automobile accident of October 10, 1988. The release was dated June 27, 1991. The withdrawal of action was filed in court on July 8, 1991.
While that action was pending, this plaintiff, Middlesex Mutual, filed the present complaint, returnable November 20, 1990 to this court, to recover, as subrogee, the monies it paid out to its insured, Sestito, for property damage resulting from the automobile accident. Therefore, this action was pending on the date the original action was settled and the withdrawals filed.
In their answer, dated July 5, 1991, to the present plaintiff's complaint, the defendants raised a special defense that the plaintiff's claim is barred by the doctrine of res judicata. The basis of the bar is that the defendants had already paid the property damage claim to the plaintiff's insured. The property damage claim was specifically included in the $55,000.00 release agreement signed between Sestito and the defendants, which resulted in the withdrawal of the initial action by Sestito.
The defendants have moved for summary judgment as to this special defense, claiming there is no dispute as to the facts. The plaintiff has objected to the motion on the bases that (1) res judicata does not apply where there is no judgment and (2) there are factual issues which must be resolved.
I. CT Page 7154
The parties seem in accord that the rules of res judicata are based on a public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate. In Re: Juvenile Appeal (83-DE), 190 Conn. 3010,318, 460 A.2d 1277 (1983); Duhaime v. American Reserve Life Ins. Co., 200 Conn. 360, 363-364, 511 A.2d 333 (186). The purpose of a law suit is not only to do justice but to bring an end to controversy. Duhaime, supra, at 364.
The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts and issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. Wade's Dairy, Inc. v. Fairfield, 181 Conn. 556, 559, 436 A.2d 24
(1980); Orselet v. DeMatteo, 206 Conn. 542, 545, 539 A.2d 95
(1988). If the same cause of action is again sued upon, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made. Bridgeport Hydraulic Co. v. Pearson, 139 Conn. 186,196, 91 A.2d 778 (1952); Wade's Dairy, Inc., supra, at 559-560.
In determining whether a particular claim is precluded by the doctrine of res judicata, it is crucial to define the dimensions of the original claim. The Connecticut Supreme Court has adopted the transactional test of the Restatement (Second) of Judgments. Section 24 of the Restatement (Second) provides that "the claim that is extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitute a `transaction', and what groupings constitute a `series', are to be determined pragmatically, giving weight to such consideration as whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Section 25 of the Restatement (Second) states that "the rule of Section 24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) to present evidence or grounds or theories of the case not presented in the first action, or (2) to seek remedies or forms of relief not demanded in the first action." Duhaime, supra, at 364-365; Vakalis v. Kagan, 18 Conn. App. 3363,366-367, A.2d (1989).
 II.
Where the parties are in dispute is whether or not, for CT Page 7155 purposes of the doctrine of res judicata, release settlements are considered final judgments which bar further claims arising out of the settled cause of action.
The defendants claim that the Connecticut Supreme Court has held that when an initial suit has been "terminated by settlement," a derivative suit arising out of the same cause of action is barred. Hopson v. St. Mary's Hospital, 176 Conn. 485,494, 408 A.2d 260 (1979). They also note that the Federal Court for the District of Connecticut has held that "A valid settlement agreement will be held to bar those parties on the underlying claim." DiMartino v. City of Hartford, 636 F. Sup. 1241,1244 (D.Conn. 1986).
The defendants also have noted that the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. Therefore, they claim that any defense which a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured. Orselet v. DeMatteo, 206 Conn. 542,546-547, 539 A.2d 95 (1988). A subrogee can obtain no greater rights against a third person than its subrogor had. Connecticut Savings Bank v. First National Bank and Trust Co.,138 Conn. 298, 305, 84 A.2d 267 (1951); Orselet v. DeMatteo, supra, at 547.
The plaintiff responds that the suit between Sestito and the Harrisons never went to judgment. It was instead withdrawn. The release was then exchanged for the settlement proceeds. Connecticut Law recognizes that a final judgment on the merits is conclusive on the parties to an action and their privies as to the cause of action involved. Bridgeport Hydraulic Co. v. Pearson, supra; Orselet v. DeMatteo, supra.
The plaintiff asserts there is no Connecticut case which holds that a settlement entered into which terminates a civil action by means of a release and withdrawal is a final judgment which should be given res judicata effect. The federal case of DiMartino v. City of Hartford, supra, merely stands for the proposition that a settlement agreement may be summarily enforced against a recalcitrant party in federal court. There is no case which extends this rule into the Connecticut Superior Court.
This court must agree with the plaintiff that the language in Hopson v. St. Mary's Hospital, cited by the defendant, is dicta and does not comport with the more recent Supreme Court authority holding that res judicata depends on the existence of a final valid judgment on the merits. Telesco v. Telesco,187 Conn. 715, 447 A.2d 752 (1982); Corey v. AVCO-Lycoming CT Page 7156 Division, 163 Conn. 309, 307 A.2d 355, cert. denied 409 U.S. 1116
(1973).
The defendants additionally claim that settlement in the original action of Sestito v. Harrison, resulted after a full arbitration hearing entered into by agreement of all the parties in that action. In the arbitration hearing, a decision was rendered in favor of the plaintiffs Sestito and against the defendants Harrison.
"Arbitration is res judicata as to all matters in the submission." Local 1219 v. Connecticut Labor Relations Board,171 Conn. 342, 356, 370 A.2d 952 (1976). An arbitration award valid on its face has the force of a judgment and becomes res judicata as to all matters embraced in the submission. Corey v. Avco-Lycoming Division, 163 Conn. 309, 319, 307 A.2d 155 (1972).
The defendants have, however, submitted no affidavit or other evidence in support of their claim, that there was submission of the property damage as an issue for arbitration, that there was an arbitration proceeding, or what the specific award was. Assertions in a brief cannot be the basis of sustaining a motion for summary judgment. C.P.B., Sec. 380. Moreover, there is no indication that the award of the arbitrators was submitted to the court for approval by way of final judgment. C.G.S., Sec. 52-417.
Since no final judgment entered in favor of Harrison in the case of Sestito v. Harrison, and since, in this court's opinion, Connecticut limits the doctrine of res judicata as a bar to those circumstances where a final judgment has been entered, the present action is not barred by res judicata.
 III.
The plaintiff claims, in addition, that there are factual issues that require judicial fact finding as to whether res judicata is a valid defense in this action. The court will address this claim as a secondary basis for its ruling.
Even assuming arguendo that a release and withdrawal might confer res judicata finality on this claim, "[w]hether res judicata is a defense depends on the facts peculiar to the case." Orselet, supra, at 548.
The plaintiff states the evidence and affidavits submitted establish:
The defendant's insurance carrier was aware of the plaintiff's subrogation claim as early as February 15, 1989; CT Page 7157
The defendant's counsel was aware of plaintiff's subrogation claim as early as October 30, 1989;
The release executed by the Sestito's was not signed until June 17, 1991, after the present case had been returned to court and while it was pending.
The plaintiff cites Justice Shea in his dissent in Orselet, supra, calling our attention to Section 37 of the Restatement (Second) of Judgments: "[a] person denominated as the party having a proprietary or other enforceable interest in the subject matter of an action is bound by and entitled to the benefit of the rules of res judicata if he has put the person controlling the action in a position so to denominate him, unless he lacks such an interest and the opposing party has knowledge of that fact." (Emphasis added by Justice Shea.)
Justice Shea points out the comment under Section 37 explains, "the circumstances under which the claim has been `split' may put the obligor on notice that a transfer has occurred and that the transferor's involvement in the action is only nominal. Under the rule of this Section, a judgment in favor of the obligor is not preclusive against the transferor as to the issues determined in the action."
At issue in Orselet was whether a judgment in a small claim action for loss of the use of an automobile was res judicata to a second action in the Superior Court, where the plaintiff's indemnifying insurer joined as a plaintiff to recover for property damage as well as loss of use. In applying this rule to the issue in Orselet, Justice Shea stated: "The same principle should apply in favor of a transferee where the obligor had notice of his interest. Thus if the defendant's were seasonably charged with notice of the plaintiff's insurer's subrogation interest while both the small claims suit and this action were pending during the period May 18, 1984, the date of the second writ and November 21, 1984, the date of the first judgment, the bar of res judicata would be inapplicable under Section 37 of the Restatement. Any information coming to the attention of the attorneys who represented the defendants in this action must be attributed to them. Whether the defendants knew or should reasonably have known of the plaintiff's interest in the claim might under Section 37 require a factual inquiry in the trial court". Orselet, supra, at 551-552.
It appears to this court that the majority in Orselet would not disagree with this analysis if applied to the present situation. In Orselet, the majority rejected the idea of adopting as an absolute rule the concept that a defendant or CT Page 7158 defendants may consent to the splitting of a cause of action, either explicitly or implicitly by conduct, and thus waive objection to the splitting of a cause of action by failing to promptly raise objection. Orselet, supra, at 547. See, Annotation at 40 A.L.R.3d 108-31, "Waiver of, by failure to promptly raise, Objection to Splitting Cause of Action."
The majority in Orselet, after enunciating the rule that "whether res judicata is a defense depends on the facts peculiar to the case," went on to accept res judicata as a defense in that case, since "[o]n the present record, it is not unreasonable to attribute the filing of multiple suits to the lack of communication between the insured and insurer rather than to the failure of the defendants to move to consolidate the multiplicitous suits." Orselet supra, at 548-549.
The plaintiff has also alerted this court to an annotation published in 92 A.L.R.2d 102 entitled "Rights and Remedies of Property Insurer as Against Third Person Tortfeasor who has Settled with Insured." The annotation establishes that the majority rule in the United States holds that where the tortfeasor with knowledge of the insurer's subrogation rights obtains a general release by voluntarily entering into a settlement to which the insurer does not consent and to which the insurer is not a party, such release and settlement will not bar an action by the subrogating insurer. This rule is sometimes crouched in terms of the tortfeasor being estopped from asserting the release as a bar.
The plaintiff cites recent cases from other jurisdictions holding that a tortfeasor who settles with knowledge of the subrogation rights of the carrier cannot assert a general release as a defense are Nationwide Mutual Ins. Co. v. Spivey,131 S.E.2d 338; Triton Ins. Co. v. Garner, 460 S.W.2d 262.
As an example, in Home Ins. Co. v. Hertz Corp.,375 N.E.2d 115 (1978), the court held that an unlimited general release executed by the insured for consideration not specifically including an amount covering the insurer's subrogation interest did not bar a subsequent subrogation claim by the insurance company if the tortfeasor or tortfeasor's insurance company (as here) had knowledge of the subrogation interest prior to the release.
While these cases are from other jurisdictions, it is not so clear from the Connecticut cases that a similar result would not be applied in the present circumstances.
Therefore, even if one were to consider a settlement agreement and withdrawal of a pending action based thereon as the CT Page 7159 equivalent of a final judgment, the affidavits and documentation submitted by the parties establish an issue of fact concerning knowledge of, or at least notice to, the defendants' agents of the subrogated property damage claim of Middlesex well in advance of that settlement; and an issue as to whether, under those circumstances, the defendants waived the splitting of the property damage cause of action; and an issue as to whether the defendants believed that the release given by Sestito was a full release of all property damage claims arising out of the accident.
The defendants' motion for summary judgment on the second special defense is denied and the plaintiff's objection to summary judgment is sustained.
NIGRO, J.