******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAB THREE, LLC, ET AL. *v.* SANDRA FITZPATRICK
ALLEN FISCHER ET AL. *v.* LAWYERS TITLE
CORPORATION ET AL.
(AC 44393)

Prescott, Suarez and Bishop, Js.

*Syllabus*

The plaintiff property owner sought to recover damages in two actions for, inter alia, fraudulent concealment of cause of action pursuant to statute (§ 52-295), claiming that various defendant insurance brokers and agencies were liable for a $2 million judgment rendered in a prior action by intentionally misrepresenting and fraudulently concealing, inter alia, which of the defendants was the party financially responsible to the plaintiff. In the prior action, the plaintiff claimed that the defendants failed to procure adequate insurance coverage with respect to the plaintiff's property, resulting in expenditures by the plaintiff to remediate the property following the discovery of environmental contamination. Although the plaintiff secured the judgment against L Co. in the previous action, he had been unable to collect the judgment and, thereafter, filed the present two actions, claiming that the defendants withheld the identity of the individual or entity that brokered the insurance policy to force the plaintiff to attempt to obtain a judgment against a defendant without assets. After the present actions were consolidated, the trial court granted the defendants' motions for summary judgment on the ground that the plaintiff's claims were barred by the doctrine of res judicata. On the plaintiff's appeal to this court, *held* that the trial court did not err in concluding that the plaintiff's claims in the present actions were barred by the doctrine of res judicata: the prior action was rendered on the merits in favor of the defendants, the parties to both the prior action and the two present actions were the same or in privity, the plaintiff had ample opportunity to discover and to litigate which of the defendants was liable for the procurement of inadequate insurance coverage in the prior action, and actually did so and secured a judgment, and the same underlying claim was at issue in the prior action and the present actions; as the claims in all the actions stemmed from the defendants' alleged procurement of insufficient insurance coverage and were contingent on the defendants' conduct dating back to the original allegations, the present actions sought the same redress, arose from the same common nucleus of facts, and ultimately turned on which of the defendants purportedly procured the policy, both the prior and the present actions formed a convenient trial unit that conformed to the parties' expectations, and, although the legal claims in the prior action were distinct from the present actions, this did not preclude the application of the doctrine of res judicata, and the plaintiff's attempt to relitigate which of the defendants was liable for his lack of insurance coverage was merely a veiled attempt to collect his judgment from the other parties against which he already had litigated his claim and lost; moreover, the plaintiff failed to demonstrate that the discovery of new evidence had hindered his ability to litigate which of the defendants was liable for their procurement of inadequate insurance in the prior action, as the allegedly concealed facts were discovered during the proceedings in the prior action; furthermore, the doctrine of res judicata prevented the plaintiff's attempt to relitigate claims on the basis of purportedly new evidence.

Argued May 10—officially released October 18, 2022

*Procedural History*

Action in each case to recover damages for, inter alia, fraudulent concealment, brought to the Superior Court in the judicial district of Fairfield, where the cases were consolidated; thereafter, the court, *Hon. Dale W.*

*Radcliffe*, judge trial referee, granted the defendant's motion for summary judgment in the first action and the defendant Lawyers Title Insurance Corporation's motion for summary judgment in the second action and rendered judgments thereon, from which the plaintiff Alan Fischer appealed to this court. *Affirmed.*

*Laurence V. Parnoff*, with whom was *Laurence V. Parnoff, Jr.*, for the appellant (plaintiff Alan Fischer).

*Marc J. Herman*, with whom was *Jason A. Buchsbaum*, and, on the brief, *Jonathan S. Bowman*, for the appellees (defendants Sandra Fitzpatrick and Lawyers Title Insurance Corporation).

*Opinion*

SUAREZ, J. The plaintiff Alan Fischer appeals from the summary judgments rendered by the trial court in favor of the defendants Lawyers Title Insurance Corporation (LTIC) and Sandra Fitzpatrick on the plaintiff's complaints filed in two actions.[1] On appeal, the plaintiff claims that the court incorrectly determined that both of his complaints were barred by the doctrine of res judicata.[2] We disagree and, accordingly, affirm the judgments of the court.

The record, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following relevant facts and procedural history.[3] The plaintiff was the sole owner, designee, managing partner, and assignee of DAB Three, LLC (DAB Three), and he was the sole person acting through and for DAB Three. In August, 2006, DAB Three commenced a prior action (2006 action) against the following seven defendants: LTIC, Fitzpatrick, LandAmerica Financial Group, Inc. (LFG); LandAmerica Environmental Insurance Service Agency, Inc. (LEISA); Lawyers Title Corporation (LTC); Lawyers Title Environmental Insurance Service Agency, Inc. (LTEISA); and Debra Moser (collectively, 2006 defendants). See *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-06-5004236-S.

In the operative complaint in the 2006 action, DAB Three alleged that the 2006 defendants were insurance brokers and/or agents. DAB Three further alleged that it had contracted with the 2006 defendants to procure for DAB Three "a pollution legal liability policy with full and complete coverage for all environmental conditions" with respect to a parcel of real property located at 60 High Meadow Road in Brookfield (property). In August, 2000, Fitzpatrick and Moser "procured" and the other 2006 defendants "provided," a pollution legal liability policy for the property (policy) from American International Specialty Lines Insurance Company (AISLIC). DAB Three purchased the property in August, 2000, and later discovered that "previously unknown solid waste" was buried on the property. DAB Three alleged that, in June, 2001, it submitted a claim for coverage under the policy to AISLIC for the cost to remediate the buried waste at the property, but AISLIC denied that claim on the ground that the loss was not covered by the policy.[4] The 2006 defendants' failure to procure adequate insurance coverage for the property resulted in DAB Three's expenditure of $943,000 to remediate the property. On the basis of these allegations, DAB Three asserted two counts against the 2006 defendants: breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

Over the course of the next decade, the court issued

a series of rulings fully resolving the 2006 action in favor of the 2006 defendants. Particularly, in March, 2008, the court rendered summary judgment in favor of the 2006 defendants with respect to the CUTPA claim. The court held that the CUTPA claim was barred by the three year statute of limitations provided by General Statutes § 42-110g (f) because the 2006 action was filed more than three years after the procurement of the policy in 2000 and AISLIC's denial of the claim for insurance coverage in 2001.[5]

In October, 2016, the court rendered summary judgment in favor of the 2006 defendants, except for LTEISA, with respect to the breach of contract claim. The court held that there was no genuine issue of material fact that LTEISA is the only entity that DAB Three contracted with to procure environmental insurance coverage with respect to the property. The court further held that there was a genuine issue of material fact as to whether LTEISA brokered the policy in accordance with DAB Three's requested specifications. Thus, only DAB Three's breach of contract claim against LTEISA survived summary judgment.

In November, 2016, counsel for the 2006 defendants filed a motion for permission to withdraw its appearance for LTEISA on the ground that "LTEISA no longer exists" because it had changed its name to LEISA in 1999. In December, 2016, the court granted the motion for permission to withdraw. Later in December, 2016, the court issued an order dismissing the 2006 action as to LTEISA[6] "only in light of the plaintiff's counsel's representation on the record that it was not going forward with the trial as to that defendant."

DAB Three then filed an appeal to this court challenging only some of the court's orders in the 2006 action.[7] See *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, 183 Conn. App. 307, 310, 192 A.3d 510, cert. denied, 330 Conn. 921, 194 A.3d 289 (2018). In that appeal, DAB Three claimed, inter alia, that the court incorrectly rendered summary judgment in favor of LEISA, Fitzpatrick, and Moser on the breach of contract claim. Id., 309. DAB Three did not challenge on appeal the summary judgment rendered in favor of the 2006 defendants on its CUTPA claim and the summary judgment rendered in favor of LTIC on its breach of contract claim. Id., 309 n.1, 310.[8]

This court affirmed in part and reversed in part the summary judgment rendered by the court in the 2006 action. Id., 309. First, this court concluded that the trial court improperly rendered summary judgment in favor of LEISA because "[t]he record is clear that LEISA is the proper party against whom [DAB Three] may maintain a claim for breach of contract, and the [2006] defendants have so conceded." Id., 317–18. This court held that, despite the 2006 defendants' representations to the trial court that LTESIA was the only party that

brokered the policy,[9] they had conceded at oral argument before this court that "LEISA is the entity with which the plaintiff had entered into a contract to provide the insurance policy at issue." Id., 316. Second, this court concluded that the trial court properly rendered summary judgment in favor of Fitzpatrick and Moser on DAB Three's breach of contract claim. Id., 318–19. This court reasoned that, although Fitzpatrick and Moser "may be held liable for torts committed by them when acting on behalf of their principals, [DAB Three] has not alleged any tort claims against Fitzpatrick and Moser. Its sole claim against Fitzpatrick and Moser was for breach of contract. Because neither agent was a party to that contract, they cannot be held liable for its alleged breach." Id., 319. Consequently, this court remanded the case to the trial court for further proceedings on the breach of contract claim against LEISA. Id.

On remand, in October, 2018, counsel for the defendants filed a motion for permission to withdraw their appearance for LEISA on the ground that LEISA had discharged the 2006 defendants' counsel. The discharge letter attached to the motion to withdraw explained that LTIC had retained the same counsel to represent all of the 2006 defendants, and that "there [was] no longer an interest in continuing to defend the interests of LEISA" because the only entity purchased out of LFG's bankruptcy action was LTIC. See footnote 5 of this opinion. On November 5, 2018, the court granted this motion to withdraw.

On January 8, 2019, the trial against LEISA was set to proceed, however, LEISA failed to retain counsel, file an appearance, and otherwise appear at trial. On January 8, 2019, the court issued an order defaulting LEISA for its failure to appear at trial, thereby resolving the issue of liability for DAB Three against LEISA. On January 8 and 9, 2019, the issue of damages on DAB Three's breach of contract claim against LEISA was tried to a jury, which returned a verdict in favor of DAB Three in the amount of $975,000. On January 24, 2019, the court awarded offer of judgment interest in the amount of $1,073,835.62 and offer of judgment attorney's fees in the amount of $350, resulting in a total judgment against LEISA in the amount of $2,049,185.62. The plaintiff has been unable to collect this judgment against LEISA.

In March and April, 2019, the plaintiff commenced the two actions that underlie this appeal (2019 actions). The first action was commenced by DAB Three and the plaintiff against only Fitzpatrick. The second action was commenced by DAB Three and the plaintiff against LTC, LTIC, LTEISA, and LEISA. In June, 2019, the court consolidated the 2019 actions. See footnote 1 of this opinion.

The allegations of the operative complaints in the 2019 actions are congruent. The gravamen of the 2019

actions is that the defendants are liable for the $2,049,185.62 judgment rendered in the 2006 action because the defendants failed to procure adequate insurance coverage with respect to the property. The plaintiff alleges that, prior to and throughout the 2006 action, the defendants intentionally misrepresented and fraudulently concealed which of the 2006 defendants was (1) the broker of the policy, (2) Fitzpatrick's employer, and (3) the party financially liable to the plaintiff. The plaintiff alleges that the defendants "withheld" the identity of the individual or entity that brokered the policy so as to force DAB Three "to try the case and obtain a judgment in the [2006 action] against a defendant purportedly without assets." Both of the complaints in the 2019 actions assert three claims: (1) fraudulent concealment pursuant to General Statutes § 52-595, (2) common-law fraud, and (3) violation of CUTPA.

On March 3, 2020, the defendants moved for summary judgment in the 2019 actions on at least eight different grounds, including res judicata. In its memoranda of law in support of the motions, the defendants argued that res judicata barred all of the plaintiff's claims in each action because, inter alia: (1) the 2006 action resulted in a judgment on the merits; (2) the parties in the 2019 actions and the 2006 action are the same; (3) the plaintiff had the opportunity to litigate fully its claims in the 2006 action; and (4) the same claim is at issue in the 2006 action and the 2019 actions. On November 2, 2020, the plaintiff filed an opposition in which he contended, in part, that there were genuine issues of material fact precluding the application of the doctrine of res judicata. In support of their positions, the plaintiff and the defendants submitted several hundred pages of exhibits generally comprising certain filings from the 2006 action, the appeal from the 2006 action, and the 2019 actions.

On November 9, 2020, the court heard argument on the defendants' motions for summary judgment. At the conclusion of the hearing, the court issued an oral ruling granting both motions for summary judgment and overruling the plaintiff's objections thereto.[10] This appeal followed.

We first set forth the standard of review and legal principles relevant to our resolution of this appeal. The question of whether the doctrine of res judicata applies to bar the plaintiff's claims is a question of law over which we employ plenary review. See *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 75, 208 A.3d 1223 (2019). Likewise, our review of the court's decision to grant the defendants' motions for summary judgment is plenary. See *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 535, 51 A.3d 367 (2012). Summary judgment is appropriate "if the pleadings, affidavits and any other proof submitted show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.

"The doctrine of res judicata provides that [a] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties . . . upon the same claim or demand. . . . Res judicata prevents a litigant from reasserting a claim that has already been decided on the merits. . . . Under claim preclusion analysis, *a claim—that is, a cause of action—includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction*, or series of connected transactions, out of which the action arose. . . . Moreover, claim preclusion prevents the pursuit of any claims relating to the cause of action *which were actually made or might have been made*. . . . [T]he essential concept of the modern rule of claim preclusion is that a judgment against [the] plaintiff is preclusive not simply when it is 'on the merits' but when the procedure in the first action afforded [the] plaintiff a fair opportunity to get to the merits. . . . Stated another way, res judicata is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, *he may be barred from future actions on matters not raised in the prior proceeding*." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Weiss* v. *Weiss*, 297 Conn. 446, 459–60, 998 A.2d 766 (2010).

"[A]lthough parties are not *required* to resolve all disputes during a . . . proceeding, when a party had the opportunity to raise the claim and the . . . proceeding provided the proper forum for the resolution of that claim, res judicata may bar litigation of a subsequent action." (Emphasis in original; internal quotation marks omitted.) *Fisk* v. *BL Cos.*, 185 Conn. App. 671, 680, 198 A.3d 160 (2018). "A judgment is final not only as to every matter which was offered to sustain the claim, but also as to *any other admissible matter which might have been offered for that purpose*. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Emphasis in original; internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 75.

On appeal, the plaintiff does not appear to dispute that the first two elements of res judicata are satisfied.[11] Rather, the plaintiff argues that the third element is not satisfied because he did not have an adequate opportunity in the 2006 action to litigate which of the defendants is liable for the procurement of inadequate insurance coverage as the defendants concealed that fact. He further argues that the fourth element is not satisfied because the "sole claim decided on the merits [in the 2006 action] was the breach of contract liability for the policy [LEISA] sold the plaintiff."

We first address the third element, which requires that there was an adequate opportunity to litigate the matter fully in the prior action. In the present case, DAB Three and the plaintiff have had an ample opportunity during the ten year pendency of the 2006 action, the appeal therefrom, and on remand, to discover and litigate which of the defendants were liable for the purported lack of insurance coverage with respect to the property. Not only did DAB Three have the *opportunity* to litigate which of the defendants were liable, but DAB Three *actually* litigated its claims against the defendants and was not successful. In the 2006 action, DAB Three asserted breach of contract claims and CUTPA claims against the defendants, asserting that they were liable for their failure to procure adequate insurance coverage for the property. The court in the 2006 action held that the CUTPA claim was time barred and that there was no genuine issue of material fact that the defendants did not contract to procure the subject policy. On appeal from the 2006 action, DAB Three did not challenge the court's summary judgment in favor of the defendants as to the CUTPA claim and did not challenge the court's summary judgment in favor of LTIC as to the breach of contract claim. *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, supra, 183 Conn. App. 309 n.1, 310. In that appeal, this court affirmed the summary judgment rendered in favor of Fitzpatrick on the breach of contract claim. Id., 319.

Nevertheless, the plaintiff argues that he did not have an adequate opportunity to litigate his claims against the defendants in the 2006 action because of two facts that were disclosed in the motions for permission to withdraw as counsel filed in the 2006 action. First, the plaintiff states that he learned from the November, 2016 motion for permission to withdraw that LTEISA no longer existed because it changed its name to LEISA in 1999. Second, he states that he learned from the October, 2018 motion for permission to withdraw that LTIC had retained one firm to represent all of the defendants, which "called into question for the first time" which of the defendants were "solvent."[12]

We reject the plaintiff's argument because he has failed to demonstrate that his discovery of these facts hindered his ability to litigate which of the defendants

are liable for their procurement of inadequate insurance. There was nothing preventing the plaintiff from discovering or litigating in the 2006 action whether LTEISA existed as an entity or whether LTIC had adequate funding to satisfy a judgment in the 2006 action. Primarily, both of these "concealed" facts were discovered *during* the 2006 action. The plaintiff thus had the ability to seek reconsideration, to seek discovery, to amend the pleadings, to move to open the judgment, or to appeal on the basis of these facts. See, e.g., *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 608, 922 A.2d 1073 (2007) (plaintiffs had adequate opportunity to litigate claims because they could have amended complaint to include bad faith allegations that arose *after* complaint was filed); *Fisk* v. *BL Cos.*, supra, 185 Conn. App. 680–81 (plaintiff had adequate opportunity to litigate claims because he failed to amend pleadings to include claims that eventually were raised in second action). Instead of taking action to raise its fraud claims in the 2006 action, DAB Three declined to try its action against LTEISA and, after its partially successful appeal, obtained a $2 million judgment against LEISA. After obtaining its $2 million judgment, the plaintiff commenced the 2019 actions asserting the fraud claims that he could have made in the 2006 action. Here, "[i]n effect, the plaintiff is seeking to relitigate a single claim under a new theory in order to obtain an additional remedy, and this he may not do." *Duhaime* v. *American Reserve Life Ins. Co.*, 200 Conn. 360, 366, 511 A.2d 333 (1986).

Moreover, the doctrine of res judicata prevents the plaintiff's attempt to relitigate claims on the basis of his purportedly new evidence. See, e.g., *Powell* v. *Infinity Ins. Co.*, supra, 607–608 (res judicata barred second action supported by "additional evidence" of bad faith litigation conduct discovered in first action); *Couloute* v. *Board of Education*, 204 Conn. App. 120, 134–35, 252 A.3d 420 (res judicata barred second action supported by "new information" not available during first action because "Connecticut law does not allow for the plaintiffs to circumvent the doctrine of res judicata by the reassertion of the same claims even after new information or evidence has been discovered"), cert. denied, 336 Conn. 946, 250 A.3d 694 (2021). Additionally, neither of the allegedly concealed facts has any bearing on the plaintiff's ability to litigate against *the defendants* in the first instance. The facts as to whether LTEISA existed and whether LTIC may have funds to satisfy the judgment are immaterial to prove whether the defendants are liable for their inadequate procurement of insurance coverage. See, e.g., *Carabetta Organization, Ltd.* v. *Meriden*, 196 Conn. App. 147, 154–55, 229 A.3d 124 (res judicata barred second action founded on " 'different types of conduct by different defendants and the different effects of that conduct' "), cert. denied, 335 Conn. 940, 237 A.3d 729 (2020). Consequently, we conclude that the third element is satisfied.

We next turn to the fourth element, which requires that the same underlying claim must be at issue. Connecticut courts apply the transactional test to determine whether the same claim was at issue in both actions. "Under the transactional test, res judicata extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. . . . What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. . . . [E]ven though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action. . . . In applying the transactional test, we compare the complaint in the [present] action with the pleadings and the judgment in the earlier action." (Citations omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 159–60, 129 A.3d 677 (2016).

Applying the transactional test, we conclude that the same underlying claim is at issue in the 2006 action and the 2019 actions. The allegations are related in time because, although the 2006 action focused on the defendants' conduct between 2000 and 2006, whereas the 2019 actions are founded on allegations spanning 2000 through at least 2019, the plaintiff repeatedly confirms in his briefs on appeal that the 2019 actions are contingent on the defendants' conduct dating back to 2000. As for space, origin, and motivation, the 2006 action and the 2019 actions stem from the defendants' alleged procurement of insufficient insurance coverage. The 2006 action and the 2019 actions seek the same redress, specifically the $2 million in damages that the plaintiff allegedly sustained due to the defendants' failure to procure adequate insurance coverage for the property. The 2006 action and the 2019 actions arise from the same common nucleus of facts, particularly the actions and inactions taken by the defendants in connection with the alleged procurement of the policy. See *Summitwood Development, LLC* v. *Roberts*, 130 Conn. App. 792, 804, 25 A.3d 721 (res judicata barred second action alleging fraudulent conduct because claims arose from same facts and sought redress for same injury stemming "from the same series of transactions, namely, the negotiation, execution, review and performance, or lack thereof, of the sale and leaseback agreement"), cert. denied, 302 Conn. 942, 29 A.3d 467 (2011), cert. denied, 565 U.S. 1260, 132 S. Ct. 1745, 182 L. Ed. 2d 530 (2012). In short, the 2006 action and the 2019 actions ultimately turn on which of the defendants purportedly procured the policy. See, e.g., *Powell* v. *Infinity Ins. Co.*, supra, 282 Conn. 605 (res judicata barred second action

because both actions "turn essentially on the defendant's refusal to pay in accordance with the terms of [an] uninsured motorist policy").

Additionally, both cases form a convenient trial unit that conforms to the parties' expectations. There would have been considerable overlap of witnesses and proof relevant to the 2006 action and the 2019 actions. Both trials would involve the presentation of the same exhibits and witnesses, specifically including the policy, the correspondence and discussions among the parties regarding the policy, the requests for coverage by the plaintiff and DAB Three, and the damages sustained. See, e.g., *Fernandez* v. *Mac Motors, Inc.*, 205 Conn. App. 669, 676–77, 259 A.3d 1239 (2021) (res judicata barred second action where "both actions constituted a single transaction that would have formed a convenient trial unit" as both actions shared same parties and "central allegation"). Much of the evidence probative to prove which defendant is liable for failing to procure adequate coverage is the same in the 2006 action and the 2019 actions.

The fact that the legal claims in the 2006 action (breach of contract and CUTPA) are distinct from the 2019 actions (fraudulent concealment, common-law fraud, and CUTPA) does not preclude the application of res judicata. See *Duhaime* v. *American Reserve Life Ins. Co.*, supra, 200 Conn. 364–65 (res judicata extinguishes claim despite fact that " 'the plaintiff is prepared in the second action (1) [t]o present evidence or grounds or theories of the case not presented in the first action, or (2) [t]o seek remedies or forms of relief not demanded in the first action' "). Indeed, a CUTPA claim was asserted in the 2006 action and in the 2019 actions, and the fact that the 2019 actions additionally assert legal claims of fraudulent concealment and common-law fraud is of no moment. See, e.g., *Smith* v. *BL Cos.*, 185 Conn. App. 656, 670, 198 A.3d 150 (2018) (res judicata barred second action despite fact that it asserted different legal theories); *Buck* v. *Berlin*, 163 Conn. App. 282, 293, 135 A.3d 1237 (applying res judicata where "virtually indistinguishable" factual circumstances gave rise to distinct legal theories), cert. denied, 321 Conn. 922, 138 A.3d 283 (2016).

Finally, this case exemplifies the policy considerations supporting the doctrine of res judicata, which is to promote "judicial economy, minimizing repetitive litigation, preventing inconsistent judgments and providing repose to parties" as "balanced against 'the competing interest of the plaintiff in the vindication of a just claim.' " *Weiss* v. *Weiss*, supra, 297 Conn. 465. The plaintiff has had a full opportunity to vindicate his claim and has a $2 million judgment to show for it. The plaintiff's attempt to relitigate which of the defendants is liable for his lack of insurance coverage is merely a veiled attempt to collect his $2 million judgment from

other parties against which he already has litigated his claim and lost. This is the precise type of action to which the preclusive effect of the doctrine of res judicata applies.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] There are two actions, which were consolidated, underlying this appeal: *DAB Three, LLC* v. *Fitzpatrick*, Superior Court, judicial district of Fairfield, Docket No. CV-19-6084254-S, and *Fischer* v. *Lawyers Title Corporation*, Superior Court, judicial district of Fairfield, Docket No. CV-19-6084901-S.

Dab Three, LLC, which was an entity managed by Alan Fischer, also was named as a plaintiff in both of the underlying actions. On July 15, 2019, the court dismissed Dab Three, LLC's claims in both actions for lack of subject matter jurisdiction because DAB Three, LLC, was dissolved in December, 2017. The court's judgments dismissing the claims of DAB Three, LLC, are not at issue in this appeal. We refer to Alan Fischer as the plaintiff because he is the only plaintiff participating in this appeal. We note that Fischer's first name has been spelled inconsistently in various court documents as Alan, Allen and Allan.

Moreover, the complaint filed in the action assigned Docket No. CV-19-6084901-S, also named as defendants: Lawyers Title Corporation, Lawyers Title Environmental Insurance Service Agency, and LandAmerica Environmental Insurance Service Agency. None of these entities is participating in this appeal. Consequently, we refer to LTIC and Fitzpatrick collectively as the defendants and individually by name where appropriate.

[2] The plaintiff raises several additional claims on appeal, including that the court incorrectly determined that (1) there were no genuine issues of material fact as to whether the defendants engaged in fraud, LTIC was Fitzpatrick's employer, the defendants breached their duty of care, and damages, (2) General Statutes § 52-595 did not toll the statutes of limitations applicable to his claims, and (3) collateral estoppel barred both of his complaints. In light of our conclusion that the doctrine of res judicata bars all of the plaintiff's claims, we need not reach any of the plaintiff's additional claims on appeal.

[3] During the pendency of this appeal, this court granted the plaintiff's motion to take judicial notice of the files and decisions rendered in the matters of *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-06-5004236-S, and *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, 183 Conn. App. 307, 192 A.3d 510, cert. denied, 330 Conn. 921, 194 A.3d 289 (2018). Accordingly, our decision also relies on facts contained in those matters.

[4] The plaintiff and DAB Three have been unsuccessful in their litigation to obtain insurance coverage under the policy from AISLIC for these remediation costs. See, e.g., *Fischer* v. *American Specialty Lines Ins. Co.*, Docket No. 3:07CV1871 (MRK), 2010 WL 2573909, *6 (D. Conn. May 14, 2010) (granting summary judgment in favor of AISLIC on claim by plaintiff and DAB Three that AISLIC improperly denied coverage pursuant to policy).

[5] In September, 2015, the court granted LFG's motion to dismiss in the 2006 action on the ground that it lacked subject matter jurisdiction because LFG had filed for bankruptcy and, thus, the United States Bankruptcy Court had exclusive jurisdiction over all of LFG's "prepetition legal obligations." The court held that DAB Three had failed to file a proof of claim in LFG's bankruptcy case and, consequently, DAB Three's claim against LFG was extinguished when LFG was granted a discharge in the bankruptcy case.

[6] The court's order stated that the 2006 action was dismissed only "as to the defendant Lawyers Title Insurance Service Agency . . . ." We construe, as do the parties in the present appeal, that the court's dismissal of "Lawyers Title Insurance Service Agency" to be a misnomer as that entity was not a defendant. Instead, it is apparent that the court dismissed LTEISA because that was the only remaining defendant.

[7] During the pendency of the appeal from the 2006 action, on December 1, 2017, DAB Three entered into an agreement with the plaintiff whereby DAB Three assigned all of its assets and liabilities to the plaintiff. One of these assets assigned by Dab Three to the plaintiff was DAB Three's "rights, title and interest in [the 2006 action] for all its claims known and unknown, present and future for damages and losses . . . ." The agreement further affords the plaintiff "all rights, benefits and control of the [2006 action] and for the [plaintiff] to process the [2006 action] in his name or in the name

of DAB Three . . . ." DAB Three was dissolved shortly after the execution of this assignment agreement.

[8] DAB Three filed an amended appeal to include a challenge to the court's grant of the motion for permission to withdraw appearance for LTEISA filed by counsel for the 2006 defendants.. *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, supra, 183 Conn. App. 312. This court dismissed DAB Three's amended appeal because it was rendered moot when DAB Three "opted not to proceed to trial against LTEISA and the claims against LTEISA were dismissed." Id.

[9] The 2006 defendants' memorandum of law in support of the motion for summary judgment contended that "Defendant Lawyers Title Environmental Insurance Service Agency ('LEISA') brokered and procured a pollution legal liability insurance policy on behalf of [DAB Three] dated August 1, 2000 . . . . LEISA is listed as the sole broker on the policy. . . . LEISA only brokered the policy. It did not issue it; the policy was issued by AISLIC. LEISA was authorized to act as an insurance broker in the state of Connecticut at that time. . . . None of the other [2006] defendants were authorized to act as, and did not act as insurance brokers in the state of Connecticut at that time and never provided services to clients, including [DAB Three], as insurance brokers." Similarly, Fitzpatrick's affidavit submitted in support of the motion for summary judgment used the LEISA acronym to refer to LTEISA. The 2006 defendants' use of the acronym LEISA to refer to the separate entity LTEISA created some uncertainty as to whether LEISA or LTEISA was liable on DAB Three's breach of contract claim.

[10] The only record of the court's summary judgment decisions is the unsigned transcript of the November 9, 2020 hearing. The plaintiff filed requests for memoranda of decision in the 2019 actions, but the court never acted on these requests. The plaintiff did not file with this court a notice pursuant to Practice Book § 64-1 (b) in order to obtain a memorandum of decision from the trial court. Thus, in the absence of a memorandum of decision or a transcript signed by the court, the plaintiff, as the appellant, has failed to satisfy his burden to provide this court with an adequate record for review. See *Santoro* v. *Santoro*, 132 Conn. App. 41, 47, 31 A.3d 62 (2011). Nevertheless, this deficiency does not preclude our consideration of the plaintiff's claims on appeal because "the certified transcript provides the basis of the trial court's decision"; id.; and our standard of "review is plenary, and the precise legal analysis undertaken by the trial court is not essential to [this court's] consideration of the issue on appeal." (Internal quotation marks omitted.) Id.

Additionally, the court's brief oral ruling does not explicitly state that it granted the defendants' motions for summary judgment on the ground of res judicata. Rather, the court granted the defendants' motions for summary judgment on a myriad of grounds. One of those grounds was the related doctrine of collateral estoppel, which, the court reasoned, barred the plaintiff's complaints because "all of the issues in each of these files could have been raised and could have been litigated in the underlying action and were not." See *Independent Party of CT–State Central* v. *Merrill*, 330 Conn. 681, 712, 200 A.3d 1118 (2019) ("'[a]lthough res judicata and collateral estoppel often appear to merge into one another in practice, analytically they are regarded as distinct' "). No party on appeal discusses this discrepancy within the court's decision and, instead, the parties proceed on the assumption that the court granted summary judgment on the ground of res judicata.

Consistent with the approach taken by the parties, we dispose of this appeal on the ground of res judicata because "[i]t is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 203 Conn. App. 752, 761–62, 250 A.3d 731, cert. denied, 336 Conn. 946, 251 A.3d 77 (2021). This is particularly true in the present case as both parties briefed the issue of res judicata before the trial court, submitted exhibits in support of their res judicata arguments before the trial court, briefed the issue of res judicata on appeal, and our standard of review is plenary. See id., 762 (res judicata barred petitioner's claim, despite fact that trial court did not rely on res judicata to dismiss petition, because parties presented evidence and briefed issue of res judicata); *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288–89, 145 A.3d 408 (although basis for trial court's decision was not clear, this court may affirm trial court's decision on properly raised ground because standard of review was plenary), cert. denied, 323 Conn. 939, 151 A.3d 387 (2016); *State* v. *Martin M.*, 143 Conn. App. 140, 151–54, 70 A.3d 135 (doctrine of res judicata barred defendant's claims, despite fact that res judicata was not raised particularly before trial court, because standard of review was plenary, parties had opportunity to brief issue, record was adequate for review, and there was no prejudice to parties), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013).

[11] In his appellate briefs, the plaintiff does not expressly concede that the first two elements of res judicata are satisfied. Instead, the plaintiff's appellate briefs concurrently analyze res judicata and collateral estoppel, and his argument focuses only on the third and fourth elements of res judicata. To the extent that the plaintiff contests the first two elements of res judicata, we summarily dispose of those elements, for the reasons that follow.

With respect to the first element—a judgment rendered on the merits—the entire 2006 action was resolved on the merits in favor of the defendants. The court in the 2006 action rendered summary judgment in favor of the defendants on the CUTPA claim on the basis of the applicable statute of limitations and the breach of contract claim on the basis that the defendants did not contract with DAB Three for insurance coverage for the property. Neither of these summary judgments in favor of the defendants was reversed on appeal. See *DAB Three, LLC* v. *LandAmerica Financial Group, Inc.*, supra, 183 Conn. App. 309. Thus, the court's summary judgments in the 2006 action are "on the merits" for purposes of res judicata. See, e.g., *State* v. *Ellis*, 197 Conn. 436, 471, 497 A.2d 974 (1985) ("dismissal based on the statute of limitations is a dismissal on the merits" for purposes of res judicata); *Hall* v. *Gulaid*, 165 Conn. App. 857, 861–64, 140 A.3d 396 (2016) (This court held that the rendering of summary judgment on the ground that "there was no genuine issue of material fact that the [prior] action was barred by the statute of limitations" is " 'on the merits' " for purposes of res judicata because "[a] judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form. . . . A decision with respect to the rights and liabilities of the parties is on the merits where it is based on the ultimate fact or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends." (Internal quotation marks omitted.)); *Bruno* v. *Geller*, 136 Conn. App. 707, 725, 46 A.3d 974 (For purposes of res judicata, "[j]udgments based on the following reasons are not rendered on the merits: want of jurisdiction; pre-maturity; failure to prosecute; unavailable or inappropriate relief or remedy; lack of standing. . . . Other final judgments, however, whether rendered by dismissal, default or otherwise, generally are considered judgments on the merits for purposes of res judicata." (Citation omitted; internal quotation marks omitted.)), cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

With respect to the second element—the parties to both actions are the same or in privity—both defendants were parties to the 2006 action and the 2019 actions. Although the 2006 action was brought by DAB Three, and the 2019 actions were brought by both DAB Three and the plaintiff, this inconsistency is immaterial because DAB Three and the plaintiff unquestionably are in privity. See, e.g., *Girolametti* v. *Michael Horton Associates, Inc.*, supra, 332 Conn. 76–77 (setting forth relevant considerations for privity determination). Here, the plaintiff affirmatively alleges in the 2019 actions that he was the sole owner, designee, managing partner, and assignee of DAB Three, and he was the "sole person acting through and for his business." See, e.g., *Smith* v. *BL Cos.*, 185 Conn. App. 656, 665, 198 A.3d 150 (2018) (allegations that individual was acting as agent and servant of entity named in first action is sufficient to establish privity for purposes of res judicata). Moreover, DAB Three and the plaintiff share the same legal rights because they entered into an assignment agreement in which DAB Three assigned all of its assets and liabilities to the plaintiff, specifically including the rights, interest, and control of the claims asserted in the 2006 action. See footnote 7 of this opinion.

[12] The plaintiff also asserts that discovery in the 2019 actions revealed that LTIC has the only bank account among the entities listed on Fitzpatrick's office stationery.